[L. A. No. 14300.  In Bank.—January 23, 1934.]

OSA SUE LEFFERT et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, HORMEL AND COMPANY et al., Respondents.

Davis & Thorne for Petitioners.

A. I. Townsend, Everett A. Corten and J. L. Kearney for Respondents.

THOMPSON, J.—This is a proceeding to review the action of the Industrial Accident Commission in making its findings and award against the petitioners and discharging the defendant Hormel and Company and its insurance carrier, the Globe Indemnity Company, from all liability by reason of the claims asserted. Petitioners are the widow and minor stepson of Harry P. Leffert, a salesman in the em-

ploy of the defendant, who, on the morning of October 28, 1932, was struck by an automobile, receiving injuries from which he died a few hours later.

Leffert's employment on the date of his death, the amount of his earnings and the dependency of the petitioners are undisputed and there is no conflict in the testimony regarding the nature of Leffert's duties and the circumstances under which the injuries were received. The sole question argued is the compensability of the injuries from which he died. From the testimony given at the hearing by two of his fellow salesmen it appears that each salesman had a definite route to cover, calling on a furnished list of customers; that they reported at the plant, which was located at 2475 Hunter Street, each morning between 6:30 and 7 and again in the evening; that each salesman had his own car which he used in covering his route and that the company made him a weekly allowance for its use. Roach, the senior salesman, testified that it was his duty to pass on the orders for the day, from the manager or assistant manager, to the rest of the salesmen when they reported in the morning and that, after receiving their instructions, it was the custom for the salesmen, before starting on their routes, to have a cup of coffee together in Mott's coffee shop, which was located on Santa Fe Avenue about three doors south of its intersection with Hunter Street. He further testified that on the morning in question he arrived at the plant at about 6:45 A. M. and found it in flames; that no cars could be parked on Hunter Street because it was blocked off by the fire department and the police; that, on the orders of Bader, the assistant manager, he instructed the other salesmen, including the deceased, whom he found already at the plant, to go over to another office of the same company called the "Flavor Sealed Division", which was located at 9th and Alameda Streets, and to call their customers from there, explaining that the delivery of orders was delayed by the fire; that these instructions were given as all the salesmen, including Leffert, were walking down Hunter Street away from the plant; that, at the suggestion of one of the men, they then went into the coffee shop following their usual custom; that, as they left the shop, he repeated the instructions to go to the other plant, which was six or seven blocks away, and that the last he saw of

Leffert he had left the coffee shop and was crossing Santa Fe Avenue from east to west in the company of Le Brech, another salesman.

The testimony of Le Brech is that when he reported to the plant at twenty minutes of 7 he found the plant in flames and Leffert and the other salesmen already there; that while waiting for instructions he went to look for his overcoat which he had left in the office the night before; that he was informed by a fireman that a coat had been taken next door and that he there found his coat in a water-soaked condition; that on his return he found that the other salesmen had started to go toward Santa Fe Avenue and that the assistant manager told him to "go on up with Mr. Roach"; that when he got to the corner they were going into the shop to get coffee; that he put his wet coat in his car, which was parked on the west side of Santa Fe Avenue about opposite the shop, after which he, too, went into the shop; that when they emerged Leffert announced his intention of going to look for his coat which he also had left at the office the night before and asked Le Brech if he could leave his brief case in his car and lock it up; that he went with Leffert across Santa Fe Avenue, locked the brief case in the car and started back with him across the street; that, when they were within about twelve feet of the east side of Santa Fe Avenue, he heard the scream of brakes and turned to see Leffert being struck by a north-bound car.

Le Brech testified that Leffert always carried a brief case and that his own car was open so that he could not leave it there. Roach also testified that it was customary for Leffert to carry a brief case as part of his equipment and, when asked whether the salesmen "ordinarily and customarily wear overcoats in the morning when they leave", he replied: "Yes, those that have them." On these facts the commission found that "the evidence does not establish that the said Harry P. Leffert was performing services arising out of and occurring in the course of his employment as aforesaid at the time of the accident herein mentioned".

The question here to be determined is whether, having entered upon his employment on the morning of October 28, 1932, Leffert undertook an errand of so personal a nature as to remove himself from the protection of the

act. The order of the commission denying the award is based on the case of *California Casualty Indemnity Exch.* v. *Industrial Acc. Com.*, 190 Cal. 433 [213 Pac. 257], annulling an award made to the representative of the driver of an ice truck. The driver was given a designated route by his employer and was expected to cover it in an average working day. No specific hour was set aside for lunch which the drivers were allowed to get wherever they desired. The deceased arranged his route so as to deliver ice to a cafeteria where he got his breakfast at about 7 in the morning. He then continued on his route and returned to the same cafeteria for his lunch. It was conceded that his return to this district was not necessitated by the route assigned to him and that he returned solely for the purpose of getting lunch. On the day of the accident he had parked his truck across the street from the cafeteria. After lunch and before recrossing the street to the truck, he went to a cigar store to get a ''smoke'' and was run over while attempting to cross to the truck. In holding that his death was not compensable this court said: ''Neither his assigned route nor the requirements of his customers necessitated his return to that place. He had no business to transact for his employer in that vicinity. His movements during the time he was getting his noonday lunch were dictated wholly by his own desires and as the convenience of the route admitted. Had he gone home for lunch, and been injured while returning to the place of his employment, the situation would be plain. We see no distinction between such a case and this. When he ceased delivering ice, deviated from his route, and returned to the cafeteria for lunch, he was not doing anything required by or incidental to the employer's business. When struck down by the automobile and injured, his relation to his employment had not changed.'' We do not consider this case to be controlling, but prefer rather to apply the principles exemplified by *Western Pac. R. R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413 [224 Pac. 754]. In that case compensation was allowed for the death of a messenger who was struck by an automobile while returning on his bicycle to his place of employment from his home, where he had gone to get a raincoat. It was held that it was a reasonable act for the employee to go out of his way to obtain his raincoat, a storm having come up and his

duties requiring him to be outside no matter what the weather. These facts are more closely analogous to the present case than are the facts in *California Casualty Indemnity Exch.* v. *Industrial Acc. Com., supra.* It is urged by the commission that there is no showing here that the weather on the morning of the accident required the wearing of an overcoat, but that, on the contrary, there is evidence to sustain the inference that Leffert only went after the coat because he desired to retrieve it and save it. This does not, in our opinion, prevent the case from coming within the rule that acts necessary to the comfort, convenience and welfare of the employee while in the discharge of his work do not take him outside the course of his employment.

As we look at these facts, Leffert was, when injured, engaged in doing something he might reasonably have been expected to do while in the performance of his duty. Unlike the driver of the ice truck in *California Casualty Indemnity Exch.* v. *Industrial Acc. Com.,* discussed above, he was in the general vicinity where his work compelled him to be, and the accident occurred during the hours of work, not during a period which was allowed him as his own time. The custom of going to the coffee shop after receiving the orders for the day and before starting on the day's rounds was acquiesced in by the employer, probably because the salesmen were required to report at a very early hour in the morning. It seems to be conceded that Leffert had not stepped outside the course of his employment up to the point where, having announced his intention of recovering his overcoat if he could, and, having placed his brief case in the car of Le Brech, which was parked close by, he started back across the street with the purpose of looking for his coat. Had he been going to look for his brief case or customer list it could not seriously be contended that the errand was personal. The saving of his overcoat was also reasonably incidental to the performance of his duties as a salesman. Roach testified that the salesmen who had overcoats customarily wore them when starting on their rounds in the morning and Le Brech testified that he saw Leffert with his overcoat when he reported in to the office the evening before, and when asked whether he had seen him many times carrying an overcoat, he replied in the

affirmative. In view of the fact that Leffert drove an open car and that the salesmen started on their rounds at an early hour in the morning, the carrying of an overcoat seems an ordinary and necessary precaution. The absence of a showing that Leffert needed the coat on that particular day is immaterial. He was allowed to leave it at the office and the conditions of his work required its use from time to time. That he sought to recover it for future use did not take him out of the course of his employment.

The order of the commission denying compensation to petitioners is annulled.

Shenk, J., Curtis, J., Langdon, J., Preston, J., and Waste, C. J., concurred.

Rehearing denied.