[L. A. No. 18248.   In Bank.   Dec. 2, 1942.]

MABEL MAY ELLIOTT et al., Petitioners, v. INDUS-
TRIAL ACCIDENT COMMISSION et al., Respon-
dents.

Arthur G. Baker, Joseph Hansen and James A. Walker for
Petitioners.

Everett A. Corten, J. Gould and Marguerite Arnold for
Respondents.

CARTER, J.—Petitioners, the wife and children of Robert
Andrew Elliott, deceased, seek to have annulled an order of
the Industrial Accident Commission denying them compen-
sation for the death of the deceased.

Decedent was employed as an electrician and mill-
wright by the Globe Grain & Milling Company. When he
left home on February 17, 1940, he had a light cough but
otherwise seemed to be in good physical condition. He ar-
rived at his place of employment at about 7 a. m., and shortly
thereafter informed Mr. Fordahl, a fellow employee, that he

did not feel very well, which he ascribed to a former attack of influenza. To Mr. Fordahl's question as to whether he thought a drink of wine would "do him any good," he replied that he thought it would. Mr. Fordahl then obtained a bottle from his locker containing what he supposed was wine from which decedent took a swallow. He spit it out declaring that it was not wine. The contents of the bottle was carbon tetrachloride, used as an insect spray, a poison from which decedent died. Mr. Fordahl had found the bottle in the carpenter shop where he usually did his work, about two weeks before the above incident. It was standing upon a plank lying across two saw-horses and was covered with a flour sack. It bore a label reading "Muskatel Wine." Mr. Fordahl placed the bottle in his locker, which he kept locked.

The employer had a rule prohibiting his employees from drinking while at work, but it does not appear whether or not deceased was aware of that rule. It does not appear under what circumstances the bottle came to be in the carpenter shop. The employer kept drums of carbon tetrachloride to be used in killing weevils.

The commission found that decedent's death did not arise out of his employment, and that is the sole issue presented on this review inasmuch as it cannot be doubted that the carbon tetrachloride was consumed during the course of the employment.

The rule here pertinent was first stated in *Whiting-Mead Com. Co.* v. *Industrial Acc. Com.*, 178 Cal. 505 [173 P. 1105, 5 A.L.R. 1518], as follows:

" 'Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of his work. . . . That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incidental dangers. At the same time injuries occasioned by them are accidents resulting from the employment.' " It has been *applied* where the injury occurred while the employee was engaged in various acts such as: smoking (*Whiting-Mead Com. Co.* v. *Industrial Acc. Com., supra*); going to

obtain a slicker to wear in the performance of his duties (*Western Pacific R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413 [224 P. 754]; going to obtain an overcoat (*Leffert* v. *Industrial Acc. Com.*, 219 Cal. 710 [28 P.2d 911]); going into a hallway to obtain fresh air (*F. W. Woolworth Co.* v. *Industrial Acc. Com.*, 17 Cal.2d 634 [111 P.2d 313]); going to obtain water to revive a fellow employee who had fainted (*County of Los Angeles* v. *Industrial Acc. Com.*, 89 Cal.App. 736 [265 P. 362]); returning from purchasing a package of cigarettes for employee's own use (*Western Pipe etc. Co.* v. *Industrial Acc. Com.*, 49 Cal.App.2d 108 [121 P.2d 35]); domestic servant sewing a hem on her dress (*Employers' etc. Corp.* v. *Industrial Acc. Com.*, 37 Cal.App.2d 567 [99 P.2d 1089]).

In the instant case the employee was not feeling well, and took what he supposed was wine as a medication for his indisposition. Certainly a reasonable endeavor to treat by simple remedies a physical ailment occurring during an employee's working hours is an incident of the employment under the circumstances here presented. Such an act is clearly for the comfort of the employee and definitely cannot be said to be less in the contemplation of the employer than smoking by the employee. If an employee may satisfy his mere personal desires such as smoking he may with more reason administer to temporary and minor ailments. The bottle from which he drank was on his employer's premises, and although it does not appear how it came to be there, the substance therein was that used by the employer in its business and kept on its premises in large containers. In the case of *Security Mut. Casualty Co.* v. *Wakefield*, 108 F.2d 273, an employee in the calf splitting room, suffering from indigestion, went to the adjoining pickling room with a fellow employee to obtain a drink of water. He told the latter he would like to have some soda to relieve the indigestion. Upon reaching the pickling room he observed a barrel painted red with a label reading "sodium nitrate." The barrel being filled with a white substance he believed to be baking soda, he took some in water and died therefrom. While it is true that the employer therein conceded that the indigestion arose out of the employment, the court announced the rule heretofore stated and held that the injury arose out of the employment. Furthermore, that factor is of small consequence. It is not unusual that an employee may, while working, become ill or indisposed from

causes having no connection with his employment. And under such circumstances it may be contemplated that the employee will administer common remedies to alleviate his condition. He is doing no more than should be expected of an employee, that is, administering to his normal body wants.

Respondents refer to the employer's rule that employees "are not allowed to drink while they are working," as preventing recovery by petitioners. The rule as it appears from the record is vague and indefinite, and there is no evidence that the deceased was aware of it. Its application should properly be interpreted as prohibiting the consumption of intoxicating liquor for the mere satisfaction of a desire therefor by an employee, rather than its use for medicinal purposes. It is not unusual that alcoholic beverages may be used medicinally. This court said in *Dillard* v. *City of Los Angeles,* 20 Cal.2d 599, 604 [127 P.2d 917], with reference to the consumption by an employee of such a beverage while suffering from an injury received in the course of his employment:

"The situation is not dissimilar to the case of an employee who suffers an injury in the course of his employment and takes what he believes to be medicine to relieve his condition temporarily, but the medicine turns out to be a deleterious substance and causes serious injury or death. Such injury or death may be said to have occurred in or arose out of his employment."

Respondents cite *O'Neil* v. *Carley Heater Co.,* 218 N.Y. 414 [113 N.E. 406, L.R.A. 1917A, 349], and decisions of the Industrial Accident Commission in support of its view, but the O'Neil case was decided in 1916 and fails to give the liberal application to the workmen's compensation law which is the clear policy of this state. The decisions of the commission are not binding upon this court.

For the foregoing reasons we believe it is clear that there is no evidence supporting the commission's refusal to make an award in favor of petitioners, and that the only reasonable conclusion that may be reached in this case compels the making of an award in their favor for the compensation to which they are entitled as the result of the death of the deceased.

The award is annulled.

Shenk, J., Curtis, J., and Traynor, J., concurred.