In the Matter of the Claim of CHARLES A. WILSON, Respondent, against GENERAL MOTORS CORPORATION, CHEVROLET MOTOR AND AXLE DIVISION, Appellant. WORKMEN'S COMPENSATION BOARD, Respondent.

Reargued February 21, 1949; decided March 3, 1949.

*Edward L. Robinson, William M. Fay* and *Solon J. Stone* for appellant. The undisputed facts show that claimant's injuries did not arise out of and in the course of his employment and, consequently, that he is not entitled to recovery herein. (*Matter of Heitz v. Ruppert,* 218 N. Y. 148; *Matter of De Voe v. New York State Rys.,* 218 N. Y. 318; *Matter of Kowalek v. New York Cons. R. R. Co.,* 229 N. Y. 489; *Matter of Scott v. Whitehouse & Co.,* 280 N. Y. 742; *Volk v. City of New York,* 284 N. Y. 279; *Matter of Rubinstein v. Madison House Soc.,* 239 App. Div. 867; *Matter of Janik v. New York Central R. R. Co.,* 234 App. Div. 642; *Matter of Humphrey v. Marcuse,* 257 App. Div. 1086; *Pate v. Plymouth Mfg. Co.,* 198 S. C. 159; *Leventhal v. Wright Aeronautical Corp.,* 25 N. J. Mis. Rep. 154; *State Young Men's Christian Assn. v. Industrial Comm.,* 235 Wis. 161; *Clark v. Chrysler Corp.,* 276 Mich. 24; *Matter of Johnson v. Smith,* 263 N. Y. 10; *Matter of Pisko v. Mintz,* 262 N. Y. 176; *Tallon v. Interborough R. T. Co.,* 232 N. Y. 410.)

*Winton H. Church* for Charles A. Wilson, respondent. I. The award of the Workmen's Compensation Board was supported by evidence, and the findings of fact which established benefit to the employer are final. (*Matter of Hoffman v. New York Central R. R. Co.,* 290 N. Y. 277.) II. Appellant seeks a reversal of a long line of New York decisions governing picnics, dances

and sponsored recreation and the adoption of the minority rule which disapproves of awards in picnic cases. (*Matter of Kenney* v. *Lord & Taylor, Inc.,* 227 App. Div. 831, 254 N. Y. 532; *Matter of Holst* v. *New York Stock Exch.,* 252 App. Div. 233; *Matter of Chadwick* v. *New York Stock Exch.,* 252 App. Div. 714; *Matter of Huber* v. *Eagle Stationery Corp.,* 254 App. Div. 788; *Matter of Piusinski* v. *Transit Valley Country Club,* 259 App. Div. 765, 283 N. Y. 674; *Matter of Fagan* v. *Albany Evening Union Co.,* 261 App. Div. 861; *Matter of Bowen* v. *Saratoga Springs Comm.,* 267 App. Div. 928.)

*Nathaniel L. Goldstein, Attorney-General* (*Daniel Polansky* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent. The finding of the board that claimant's accidental injuries arose out of and in the course of his employment, is supported by ample evidence. (*Matter of Huber* v. *Eagle Stationery Corp.,* 254 App. Div. 788; *Matter of Holst* v. *New York Stock Exch.,* 252 App. Div. 233; *Matter of Chadwick* v. *New York Stock Exch.,* 252 App. Div. 714; *Matter of Bowen* v. *Saratoga Springs Comm.,* 267 App. Div. 928; *Matter of Piusinski* v. *Transit Valley Country Club,* 259 App. Div. 765, 283 N. Y. 674; *Matter of Fagan* v. *Albany Evening Union Co.,* 261 App. Div. 861; *Matter of Clapham* v. *David,* 232 App. Div. 458; *Matter of Bollard* v. *Engel,* 254 App. Div. 162, 278 N. Y. 463; *Matter of Laubeck* v. *Toc's Products Co.,* 260 App. Div. 966, 286 N. Y. 577; *Matter of McLellan* v. *International Paper Co.,* 269 App. Div. 800, 271 App. Div. 857; *Matter of Martino* v. *Blue Ridge Coal Co.,* 248 App. Div. 660; *Matter of Schwartz* v. *Jacobs Bros. Co.,* 247 App. Div. 848, 271 N. Y. 640; *Matter of Sassano* v. *City of New York,* 272 App. Div. 843; *Le Bar* v. *Ewald Bros. Dairy,* 13 N. W. 2d 729 [Minn.]; *Thomas* v. *Proctor & Gamble Mfg. Co.,* 104 Kan. 432.)

FULD, J. Injured in a play at first base in a softball game between teams made up of employees of General Motors Corporation, claimant sought and was awarded compensation benefits. On application of the self-insured employer, we granted leave to appeal from the affirmance of that award by the Appellate Division so that we might consider whether an injury suffered by an employee voluntarily participating in an athletic or other recreational activity, under the circumstances here disclosed,

is properly compensable as one " arising out of and in the course of " his employment.

Claimant, forty-five years old, was employed as a clerk in the patrol office of General Motors which, at the time of the accident, was engaged in the manufacture of aircraft engines. Upon their own initiative, without suggestion or encouragement from the management, the employees had organized a baseball league consisting of fourteen teams. The games were played on the employees' own time in a public park many miles from the employer's plant, and the players had to provide their own transportation to and from the park. Not only were the employees not paid for time spent on the baseball field, but their wages were, indeed, actually subject to deduction if they were late for work after playing or practicing. All organizational details and all arrangements affecting the games were handled by the employees. They procured the equipment — gloves, bats and balls — and selected the uniforms, bearing the letters " M. & A." (signifying Motor and Axle Division), although it appears that the employer paid for the equipment and permitted conferences relating to the contests on company time and on the company's premises. The games were not advertised in any way, and no outside publicity whatsoever attended their playing.

The determination made by the Workmen's Compensation Board that " claimant's participation in playing baseball * * * was incidental to his employment ", was based upon findings that " the employer promoted the organization of departmental baseball teams and encouraged the participation of its employees in athletic activities " and that " the resulting better employer-employee relationship exercised a stimulating influence upon the work activity of the participant employee through such recreational facilities." The board, in holding the injury compensable, and the Appellate Division, in affirming that body's decision, relied specifically upon the evidence that the employer had paid for the equipment and had permitted conferences relating to the games to be held on company time, and that its nurse, following claimant's injury, had given him heat treatments.

The Workmen's Compensation Law has been broadly construed, and properly so, to embrace all activities which can, in any reasonable sense, be included within its coverage. (See

*Matter of Industrial Comr.* [*Siguin*] v. *McCarthy,* 295 N. Y. 443, 446–447.) Liberally though we would now apply it, however, we cannot stretch the statute's " broad and remedial purpose "— the phrase urged upon us — to cover a case such as this. By its very provisions, the statute permits compensation awards only for those injuries " arising out of and in the course of " employment. (Workmen's Compensation Law, § 10; see *Matter of Ognibene* v. *Rochester Mfg. Co.,* 298 N. Y. 85; *Matter of Gaurin* v. *Bagley & Sewall Co.,* 298 N. Y. 511; *Matter of Martin* v. *Plaut,* 293 N. Y. 617, 618.)

Though section 21 of the Workmen's Compensation Law creates a presumption — " in the absence of substantial evidence to the contrary " — that the claim for compensation " comes within the [statute's] provision ", it is a " limited presumption ". (*Matter of Magna* v. *Hegeman Harris Co.,* 258 N. Y. 82, 85.) It has no bearing here, for it cannot be used as a substitute for actual proof that the injury arose out of and in the course of the employment. (See *Matter of Dyviniek* v. *Buffalo Courier Express Co.,* 296 N. Y. 361, 364; see, also, *Matter of Daus* v. *Gunderman & Sons,* 283 N. Y. 459, 465–466; *Matter of Lorchitsky* v. *Gotham Folding Box Co.,* 230 N. Y. 8, 12.) In truth, the presumption has no place in any case once the facts are fully developed; of necessity, it fails in the presence of contrary evidence. (See *Matter of Magna* v. *Hegeman Harris Co., supra,* at p. 84.) The presumption, then, is inapplicable and inoperative in this case, and consideration of the record constrains us to conclude that the determination under review lacks evidentiary support.

These ball games, the record makes plain, were out-of-hours, off-the-premises, personal diversions of the men, and were not only optional with the employees but were exclusively for their own recreation and indulgence, without business advantage to the employer. The games were neither initiated nor sponsored by the employer, in no way connected with its affairs, and in no manner subject to its control  Even if the company had so desired, it could not have halted the ballplaying or changed the program in any way. In other words, totally lacking is any basis for an inference that it controlled the activity or sought to compel or induce any employee to participate in it. On the contrary, indication almost positive that the activity was

separate and removed from the employment is found in the fact that the employer actually penalized employees who, as a result of playing or practicing, reported late for work. Neither the circumstance that management gave its permission to employees to take part in the sport, nor even that it co-operated in the program, can be said to spell out compulsion or constraint, and no evidence on that score is supplied by testimony that a foreman once remarked that a particular game might have been won had claimant been playing. And, as indicated, we look in vain for evidence of any business advantage or benefit accruing to the company from the employees' participation in the contests. Too tenuous and ephemeral is the possibility that such participation might perhaps indirectly benefit the employer by improving the workers' morale or health or by fostering employee good will.

Personal activities of employees, unrelated to the employment, remote from the place of work and its risk, not compelled or controlled by the employer, yielding it neither advantage nor benefit, are not within the compass of the Workmen's Compensation Law. Nor is it of any operative consequence that the employer acquiesced in, or contributed some financial aid to, such activities. The slight support thus given by the employer, without attendant advertising or consequent business advantage, should be accepted for what it really was, a gratuitous contribution to its employees' social and recreational life. (See, e.g., *Matter of Rubinstein* v. *Madison House Soc.,* 239 App. Div. 867; *Clark* v. *Chrysler Corp.,* 276 Mich. 24, 29; *Pate* v. *Plymouth Mfg. Co.,* 198 S. C. 159, 162.) In a case such as the one before us, the granting of a compensation award would not only do violence to the letter of the statute but would offend against its spirit, by penalizing employers who, without prospect of profit or benefit, co-operate in enabling their employees to engage in social or athletic recreation on their own time and away from the company premises.

The conclusion thus reached impresses us as sound, the reasoning upon which it is based convincing, and, accordingly, we need not the authority or support which decisions from other States may furnish. However, it is of some consequence that every court that has passed upon the subject has likewise concluded that participation in a baseball game, under

circumstances such as those here presented, cannot be considered an incident of employment. (See *Industrial Comm.* v. *Murphy*, 102 Col. 59; *Leventhal* v. *Wright Aeronautical Corp.*, 25 N. J. Mis. Rep. 154; *Porowski* v. *American Can Co.*, 15 N. J. Mis. Rep. 316; *Pate* v. *Plymouth Mfg. Co.*, 198 S. C. 159, *supra*; *State Young Men's Christian Assn.* v. *Industrial Comm.*, 235 Wis. 161; cf. *Clark* v. *Chrysler Corp.*, 276 Mich. 24, *supra*; *Auerbach Co.* v. *Industrial Comm.*, 195 P. 2d 245 [Utah].)

In *Pate* v. *Plymouth Mfg. Co. (supra)*, the employer likewise gave financial assistance to a baseball team formed by its employees. Holding that an accidental injury suffered by an employee was not compensable, the court wrote that " ' There is no evidence that the mill exercised or attempted to exercise any control or domination of the club or endeavored to direct its activities * * * it is impossible * * * to see where the corporation had any connection with the ball club, other than from a charitable or benevolent standpoint to promote the social life of its workers. It is impossible * * * to see how the words of the statute defining a compensable injury can be stretched to cover the situation presented.' " (198 S. C., at pp. 162–163.)

And in the *Murphy case (supra)*, it was said: " It may be regrettable that this young man can not be compensated under the terms of the act, but its provisions must not be pushed beyond the limits of their purpose, nor its funds diverted to those not clearly entitled thereto and the object of their creation be thus frustrated. Kindness to one may well be cruelty to many. Allowance of this claim could but serve as a warning to employers that they may concern themselves with the social life and recreation of their men, or permit their officers to do so, or contribute to efforts to lighten life, only under penalty of liability for every accident and injury arising from such activities, however remote from the employment itself." (102 Col., at p. 62.)

There are, of course, many instances where the recreation may be so bound up with the employment that a resulting injury will be deemed one arising out of and in the course of such employment. One such is *Matter of Brown* v. *United Services for Air, Inc.* (298 N. Y. 901), which we also decide today. There, the injury occurred during a volleyball game which was

played on the employer's premises, under the employer's supervision and during the employee's lunch hour. Other instances are found in the three cases cited by Judge CONWAY in his dissent (298 N. Y. 475, 482). In one, *Matter of Kenney* v. *Lord & Taylor, Inc.* (254 N. Y. 532), the claimant was injured on company property at a gathering held at the employer's request for the purpose of having speeches on salesmanship given for the benefit of the defendant concern; in the second, *Matter of Piusinski* v. *Transit Valley Country Club* (283 N. Y. 674), the claimant was injured on the very course where he was wont to work for his employer as a golf caddy and it appeared that the game in which he was hurt constituted practice which was of some benefit to the employer; and in the third, *Matter of Huber* v. *Eagle Stationery Corp.* (254 App. Div. 788, leave to appeal denied 278 N. Y. 739), where claimant was injured while playing baseball, the team's expenses and transportation were paid for by the employer, the team was organized and supported by the employer for advertising purposes, and all this was done in the hope that a winning team would advertise the company and redound to its benefit. Thus, in each of those cases there was evidence that the activity in which the particular employee had engaged not only was encouraged by the employer, not only was directly aimed at promoting the employee's skill in the discharge of the very duties of his employment, but was of unquestioned "benefit" to the employer. On the same footing, too, stand those cases wherein the employer requires the employee to participate in the recreational activity or subsidizes it in order to derive for himself a financial return or some beneficial publicity. (See, e.g., *Matter of Holst* v. *New York Stock Exch.*, 252 App. Div. 233; *Linderman* v. *Cownie Furs*, 234 Iowa 708; *Le Bar* v. *Ewald Bros. Dairy*, 217 Minn. 16; *Salt Lake City* v. *Industrial Comm.*, 104 Utah 436.)

The further fact, relied upon by the Workmen's Compensation Board and the Appellate Division, that a company nurse gave claimant heat treatments, we put aside as inconsequential. Similar service was provided to all employees who wanted it — for all ailments, whether contracted at home or sustained on plant property, while at work or while at play. That being so, we may not view the rendering of such nursing service as acknowledgment that claimant's injury was compensable. Nor may the

additional circumstance, also remarked below, that the employer permitted conferences on company time and property, be deemed sufficient to extend the employment to claimant's voluntary personal recreation, far from his place of work and entirely outside of his working hours. Perhaps if the injury had occurred on the employer's premises during the working day at a conference relating to the games, there might have been basis for finding that the employee's general employment had not been interrupted by his participation in the discussions.

If the result we reach be thought unfortunate, the Legislature has power to alter it. As the law is now written, an employer is under no duty to compensate his employees for injuries sustained by them while pursuing their private interests on their own time and at a distance from their employer's premises. Were the courts to impose such a duty because the employer gave a modicum of encouragement to employees intent on organizing recreational activities, the employer might, in his own self-interest, seek to escape the burden by withholding all aid and support. Such a result would not, we venture, square with the large and long range objectives of the Workmen's Compensation Law.

The order of the Appellate Division and the decision of the Workmen's Compensation Board should be reversed, with costs in this court and in the Appellate Division, and the claim for compensation dismissed.

CONWAY, J. (dissenting). The problem presented is whether the claimant, a patrolman in the plant protection department of the employer, sustained an injury in the course of and growing out of his employment when he was injured in a softball game. In our State we have upheld an award made for an injury to an employee suffered while playing golf (*Matter of Piusinski v. Transit Valley Country Club*, 283 N. Y. 674); baseball (*Matter of Huber v. Eagle Stationery Corp.*, 254 App. Div. 788, leave to appeal denied 278 N. Y. 739); soccer (*Matter of Holst v. New York Stock Exch.*, 252 App. Div. 233); hockey (*Matter of Chadwick v. New York Stock Exch.*, 252 App. Div. 714.) Since there is a statutory presumption (Workmen's Compensation Law, § 21, subd. 1) that " the claim comes within the provision of this chapter " and the facts found by the board are conclusive (Workmen's Compensa-

tion Law, § 20), the only question presented is whether there is any substantial evidence to sustain the findings of the board. We may not weigh the evidence.

The referee appointed under the Workmen's Compensation Law found that the claimant's injuries " arose out of and in the course of his employment." On a review by the full board the award was affirmed and the following findings of fact were made:

" 2. On August 10th, 1944, the said Charles A. Wilson, while engaged in the regular course of his employment and while working for his employer, and *while playing baseball on a team promoted and encouraged by the employer and made up of employees of his Department,* sustained accidental injuries  *  *  *.

" 5. The employer promoted the organization of departmental baseball teams and encouraged the participation of its employees in athletic activities. It paid for the equipment and conferences were held on the company's time without deduction of pay.

" The resulting better employer-employee relationship exercised a stimulating influence upon the work activity of the participant employee through such recreational facilities.

" The claimant's participation in playing baseball was only because he was an employee and was incidental to his employment. Following the accident, nursing treatment was rendered to Charles A. Wilson at the plant." (Emphasis supplied.)

The board, therefore, concluded that " the payment of equipment by the company, conferences held on company's time without deduction of pay, nursing treatment rendered to claimant herein at plant, in conjunction with all other proof, indicate that the employer promoted the organization and also the participation in athletic activities as above described. It follows therefrom that this resulted in the fostering of better employer-employee relationship and exercised a stimulating influence upon the work activity of the participant employees through such recreational facilities."

The proof referred to and relied upon by the board was substantially as follows:

The employer, General Motors Corporation, Chevrolet Motor and Axle Division, at the time of this accident, was engaged in the manufacture of aeroplane engines. It was during wartime

and the factory was operating with day and night shifts. The employee, a man of forty-five years of age was in the patrol service of the plant protection department. There was a league of fourteen softball teams organized at the suggestion of the men, with a president and other officers. There was a rules committee consisting of the managers of each team. Claimant was asked to play on the team representing patrol service by one of his fellow patrolmen and urged to continue thereon when he failed to appear for play by his lieutenant. The teams represented many divisions of workers including one representing foreman and called "Supervision." The employer furnished all equipment, at a cost of $1,000, consisting of jerseys, caps, baseballs, bases, etc. The uniform had across the front " M. & A.", referring to the Motor and Axle Division, together with the number 10, which represented the patrol service. The games were played at Front Park, a public park of Buffalo which had baseball diamonds. In this way claimant became acquainted with the other men in the plant including "Supervision." At the time of the organization of the league, one Fred Hill, a salaried foreman, was appointed to oversee it and the team managers acted under his supervision. Hill was in charge of issuing regular company A. V. O. forms (a company classification) to authorize the dispensing of replacement softball equipment by the employer to the managers as it was needed by the teams. The company furnished a place to store and care for the equipment. Meetings of team managers were called during working hours in the conference room of the employer. At times claimant would receive a telephone message to contact the manager and to have him go over to attend the meeting. The managers would be given time off from duty by their foreman to attend the meetings without wage deduction. A schedule would be drawn at the meetings so that a player would know where he was to play the following week. There was some attendance by employees as spectators. The umpires were selected from the men and were supplied with white jerseys and caps by the employer. On the day of the injury claimant was picked up by his sergeant, a superior, in the latter's automobile and driven to the park. On that day the claimant during play collided with one of the players on the opposing team. As a result he suffered a comminuted fracture

of his left leg at the knee with consequent permanent loss of use of that leg to the extent of two thirds.

The Appellate Division in unanimously affirming the findings of the board said in part: " Claimant was a member of one of fourteen softball teams, composed of employees of the employer's Tonawanda plant and organized into a league. There is evidence [1] that the company furnished playing equipment, [2] permitted conferences of the league's officials to be held on company time without deduction of pay, and [3] furnished nursing treatment to claimant after his injury." (Arabic numerals supplied.)   (272 App. Div. 845.)

The board and the Appellate Division obviously proceeded upon the theory that an injury sustained by an employee while engaged in a recreational activity, so promoted and encouraged by the employer and redounding to the employer's benefit, is compensable as arising out of and in the course of employment. We believe that theory to be correct and in accord with the letter and spirit of the law and the previous decisions of this court.

The broad and remedial purpose of the Workmen's Compensation Law would not be effectuated by narrowly restricting coverage solely to employees who are injured while performing the specific tasks for which they were hired.   It is one of the attributes of the employer-employee relationship that the employee usually attempts in some measure to accede to the wish, as well as the command, of his employer.   Because of the subordinate position of the employee, the employer's wish may well acquire the force of a compulsion — to a greater or lesser degree according to the circumstances of each case. This moral suasion exerted by the employer is a very real factor in any employment and cannot be ignored by the board or the courts in cases like the one at bar.   Thus, where an activity — different from the employee's regular duties and even recreational in nature — is encouraged, promoted or subsidized by the employer, there is a strong compulsion upon the employee to participate in the outside activity.   We must recognize this human reaction and the social pressures that prompt it.   It has a very practical aspect, too; for a young employee with a young family might better resist the urging of his superiors to engage in the playing of baseball where there is frequently the fracture of fingers or ankles, even among professionals, if

his family is to be left without compensation during his recovery from an injury, assuming that there may be a complete recovery.

True, it is urged by the employer that there was no compulsion exercised to induce the claimant to play. We do not think proof of direct compulsion was necessary since the employer was found to have sponsored the adventure in employee-supervision relationship but again that would be a question of fact. Recently there was consideration of the subject of what constitutes compulsion as a matter of law in *Matter of Dearing* v. *Union Free School, Tonawanda* (272 App. Div. 167), but we felt that there was no room for such consideration where the Workmen's Compensation Board had already passed upon the question as one of fact. We reversed the order of the Appellate Division and reinstated the decision of the board on the ground that the board's finding of fact that the injury did not arise out of and in the course of claimant's employment was supported by substantial evidence and was, therefore, conclusive under section 20 of the Workmen's Compensation Law. (*Matter of Dearing* v. *Union Free School, Tonawanda*, 297 N. Y. 886, 887.)

We think it clear too that the employer derived business benefit from its promotion and encouragement of the activity. That activity tended to exercise a salutary influence upon employer-employee relations and increased contacts and acquaintanceship among the employees. The board has so found upon substantial evidence. The money expenditure would be properly allocable to " employees' welfare " a proper item of " operating expense " for corporate and tax purposes. We must bear in mind that directors do not attempt to expend moneys for noncorporate purposes.

It is also urged that an affirmance here may cause employers to reduce their offers of relaxation and athletic activities to their employees. The probability of such future conduct on the part of employers, we think, will depend in large measure upon experience as to the frequency of injuries sustained by employees during such athletic activities. If the injuries suffered by players in a particular sport are infrequent and unusual, the employer will continue its practice since protection under the Workmen's Compensation Law may be obtained by a slight increase in the security bond deposit as to self-insurers, or additional pennies in a State-wide insurance rate as to other employers. If the injuries are frequent and serious, then the

risk may be an unreasonable one for the employer, and also for a player with a family, and it may be that the employer will not wish to underwrite that risk, nor the player to assume it without workmen's compensation to take care of him and his family. At any rate, it is better for groups of employers and employees to know where they stand and so be able to govern themselves accordingly. If athletic contests for foreman and workers do not benefit the corporation, there is no corporate reason for providing them. If they do, then injuries suffered for the corporation's sake, must draw workmen's compensation in their wake.

Finally, the employer urges certain out-of-State cases upon us as analogous. The nearest in point is a South Carolina case, *Pate* v. *Plymouth Mfg. Co.* (198 S. C. 159). The next nearest is a Michigan case, *Clark* v. *Chrysler Corp.* (276 Mich. 24). The difficulties in construing our Workmen's Compensation Law by the light of South Carolina or Michigan cases are manifold. First, the statutes are not the same. Neither State has a provision such as we have in subdivision 1 of section 21, to the effect that there is a fact presumption at the threshold of the inquiry which, with some evidence of connection between the accident and the employment, establishes the claimant's case. Then, other States neither have the number and variety of factories we have here, nor the number of factory workers. Therefore, they have not our problems and so their Legislatures have not framed laws to meet them. As a result, their courts have not written against a background of our problems. In other words, quite naturally, not having our problems, they have not our viewpoint or approach. It is doubtful from a reading of the language in the South Carolina and Michigan cases whether in those States the cases cited in the first paragraph of this opinion would have been decided as our courts decided them.

Can we say on this record that the presumption of fact of subdivision 1 of section 21 of the Workmen's Compensation Law, has been overcome by "substantial evidence" to the contrary? That section reads:

"PRESUMPTIONS. In any proceeding for the enforcement of a claim for compensation under this chapter, it shall be presumed in the absence of substantial evidence to the contrary

" 1. That the claim comes within the provision of this chapter; * * *." We think not. (*Matter of Hoffman* v. *New York Central R. R. Co.*, 290 N. Y. 277, 278–279.)

We have gone to some length in upholding awards similar to the one in the instant case. For example, in *Matter of Piusinski* v. *Transit Valley Country Club* (283 N. Y. 674, *supra*), we affirmed an award made to a golf caddy who was injured when hit by a ball while playing on his employer's course with another caddy as was customary for them. The caddies were not required so to play but it was to their advantage to do so and the employer encouraged the practice. Such games between caddies were not only for their own amusement but also tended to make them more efficient. It is true that the injury there was on the employer's property but the employer used that property as a golf course. Here, the ballplaying was necessarily in a park. The employer's property was used as a factory and one cannot play ball in a factory. It should make no difference in the reasoning applied whether the employer owned a field where the game was played or the playing was done in a public park. The question is at bottom one of sponsorship and accruing benefit. Similarly, in *Matter of Kenney* v. *Lord & Taylor, Inc.* (254 N. Y. 532), the claimant attended a dinner given by her employer in the employer's building after regular working hours. The employees were not required to attend. No tickets were issued, no charges were made and only employees were admitted. At the dinner there were speeches on salesmanship for the benefit of the employer. Between speeches there was dancing during which claimant fell and broke her wrist. We upheld the award to her, feeling that the then Industrial Board had the right to find from the evidence that claimant was injured while in the course of her employment. It is to be noted that there is no case in this State which limits in any way the rule formulated above, and applied in the *Piusinski* and *Kenney* cases (*supra*). Since the elements upon which liability was predicated in those cases are present in the instant case, the result must be the same.

The order of the Appellate Division should be affirmed, with costs.

LOUGHRAN, Ch. J., DESMOND and BROMLEY, JJ., concur with FULD, J.; CONWAY, J., dissents in opinion in which LEWIS and DYE, JJ., concur.

Order reversed, etc.