[S. F. No. 18591. In Bank. Aug. 28, 1952.]

FIREMAN'S FUND INDEMNITY COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and ETHEL ELLIOTT, Respondents.

Leonard, Hanna & Brophy and Edmund D. Leonard for Petitioner.

Edmund J. Thomas, Jr., Robert Ball and Leonard Levy for Respondents.

SPENCE, J.—Petitioner seeks the annulment of an award of the respondent commission in favor of Ethel Elliott, who was injured while taking a walk after she had completed her household duties for her employer. This case presents a problem similar to that involved in *Liberty Mutual Ins. Co. v. Industrial Acc. Com.*, S. F. No. 18590, *ante*, p. 512 [247 P.2d 697], this day filed: the extent to which injuries sustained in the pursuit of recreational activities may be regarded as arising out of and occurring in the course of the employment. (Lab. Code, § 3600, subds. (b), (c).) A review of the instant record, in the light of the legal principles discussed in the companion case, compels the conclusion that the injury here must likewise be held noncompensable.

The facts are undisputed. Mrs. Elliott was employed as a cook and housekeeper in the Orinda home of Mrs. Georgie S. Hubbard. She worked eight hours per day, but after completing her daily duties, she remained on the premises, eating and sleeping there, except on her days off. It was her custom to take short walks once or twice a day during her free time, for recreation. She had been advised to do so by the doctor attending her employer, Mrs. Hubbard.

Mrs. Elliott sustained the injuries in question on the evening of July 10, 1950. Mrs. Hubbard was ill during the

day and Mrs. Elliott was required to remain in attendance upon her, so that she missed her customary midday walk. In the evening a friend of Mrs. Elliott came to the house before Mrs. Elliott had finished her work and waited for her so that they might take a walk together. Mrs. Elliott testified that her last task for the day was the depositing of some garbage in the refuse can near the driveway. She had told Mrs. Hubbard that she intended to take a short walk, and the latter replied, "Don't go far. You can go, but don't go far." Mrs. Elliott then joined her friend, and they started down the public road fronting her employer's property. The traveled portion of the road was paved and along each side was a graveled area, but there was no curbing or sidewalks. When they had proceeded along the road some 50 feet from the Hubbard driveway, they were confronted by the headlights of an approaching automobile. Mrs. Elliott stepped off the paved portion of the road onto the graveled shoulder, slipped and fell, breaking her leg.

Upon these facts the commission found that Mrs. Elliott "sustained injury arising out of and occuring in the course of her employment" and made its award accordingly. Petitioner contends that the record does not bring the injury within the coverage of the compensation act in that it occurred off the employer's premises while the employee was engaged during her own free time in a recreational activity entirely unassociated with the employment. ■ Liberal though the application of the compensation act has been in this state to encompass injuries which may reasonably be regarded as having some causal relation with the employment (*Industrial Ind. Exchange* v. *Industrial Acc. Com.*, 26 Cal.2d 130, 137 [156 P.2d 926]; *Lockheed Aircraft Corp.* v. *Industrial Acc. Com.*, 28 Cal.2d 756, 760 [172 P.2d 1]; *Pacific Indemnity Co.* v. *Industrial Acc. Com.*, 86 Cal.App.2d 726, 729 [195 P.2d 919]), each case must be decided in the light of its own particular facts, and here petitioner properly argues that it would require "a long stretch of the imagination" to hold Mrs. Elliott's injury "reasonably incident to [her] employment." (*Torrey* v. *Industrial Acc. Com.*, 132 Cal.App. 303, 306 [22 P.2d 525].)

■ "Where the contract of employment contemplates rendition of services on the employer's premises, injuries suffered elsewhere are ordinarily noncompensable. Under such circumstances, off-the-premises activities of an employee are not incidental to the employment, unless some special con-

nection can be shown. In each case, compensability depends upon the establishing of the existence of such a connection." (Hanna, Industrial Accident Commission Practice and Procedure, p. 37.) Application of this general rule was made in *Postal Telegraph-Cable Co.* v. *Industrial Acc. Com.*, 1 Cal. 2d 730 [37 P.2d 441], where an award for compensation was annulled upon evidence showing that the employee, a telegraph messenger on his way to work, was injured in a traffic collision at a time when he "was on no special errand for" his employer and "he had not yet reached his place of employment where his duties were to begin." (P. 732.) After noting that there must be some "causal connection" between the injury and the employment to sustain a compensation award, the court continued at page 733: "When an employee is off duty the relation of employer and employee is suspended and does not reattach until the employee resumes the master's work. It is true that this re-entry into service may occur under special circumstances before the employee reaches the premises of the master, but this can happen only where, by contract, express or implied, the relationship attaches at such earlier time. We need not pause to give examples of this exception."

Respondents argue that liability under the compensation law has been extended to cover personal acts necessary to the comfort, convenience and welfare of the employee, and within that concept the present case constitutes an exception to the general rule. But such contention overlooks the premise on which the exception is established—that the employee at the time of injury was at work and either on the employer's premises (*Whiting-Mead Commercial Co.* v. *Industrial Acc. Com.*, 178 Cal. 505 [173 P. 1105, 5 A.L.R. 1518]; *F. W. Woolworth Co.* v. *Industrial Acc. Com.*, 17 Cal.2d 634 [111 P.2d 313]; *Elliott* v. *Industrial Acc. Com.*, 21 Cal.2d 281 [131 P.2d 521, 144 A.L.R. 358]; *Employers' Liability Assur. Corp.* v. *Industrial Acc. Com.*, 37 Cal.App. 2d 567 [99 P.2d 1089]) or on a business errand off the premises (*Western Pac. R. R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413, 420 [224 P. 754]). This principle of compensability is generally stated as follows: "Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, are incidental to the service rendered by such a servant, and an injury sustained in their performance arises out of and in the course of the employment. The rule is broad enough

to include the majority of an employee's acts upon the employer's premises, such as eating lunch, getting a drink of water, smoking tobacco where not forbidden by the employer, attending to the wants of nature, changing to or from working clothes, and many others. Such acts, although not themselves representing a rendition of service, are reasonably incidental thereto, and are considered to be acts for the mutual benefit and convenience of the employer and employee.'' (Hanna, Industrial Accident Commission Practice and Procedure, p. 36; see *Whiting-Mead Commercial Co.* v. *Industrial Acc. Com., supra,* 178 Cal. 505, 507 [173 P. 1105, 5 A.L.R. 1518].) As acts reasonably to be expected, they are regarded as taking place in the course of the employment. (*Employers' Liability Assur. Corp.* v. *Industrial Acc. Com., supra,* 37 Cal.App.2d 567, 570-573 [99 P.2d 1089]; *Western Pipe & Steel Co.* v. *Industrial Acc. Com.,* 49 Cal. App.2d 108, 111 [121 P.2d 35].)

But here the employee, Mrs. Elliott, was neither at work nor on her employer's premises when injured. Respondents argue that Mrs. Hubbard's caution of Mrs. Elliott not to go far permits an inference that the latter's work for the day was not yet finished and her walk was a mere interruption in the performance of her household duties. However, such an inference cannot arise in view of Mrs. Elliott's express testimony to the contrary—that ''after [she] finished [her] work,'' had ''emptied the garbage,'' she took her ''evening walk'' with her friend and sustained the injury in question. Mrs. Hubbard's cautionary remark suggests no more than the natural response of a sick and elderly person, experiencing a feeling of loneliness upon being informed that she is to be left without a companion for a short time. No claim is made that the walk was taken other than for Mrs. Elliott's personal purposes.

Nor is there merit to respondents' position that since Mrs. Hubbard sanctioned Mrs. Elliott's departure on the proposed walk, it thereby became an act ''authorized'' by the contract of employment. A similar argument was advanced and rejected in the case of *Arabian American Oil Co.* v. *Industrial Acc. Com.,* 94 Cal.App.2d 388 [210 P.2d 732], involving a stenographer who worked and lived within her employer's fenced-in area surrounding an oil refinery in Saudi Arabia. She was injured when she and a co-employee were riding in a vehicle owned by the employer, traveling outside the fenced area and en route to a beach

for a swim. In annulling the compensation award, the court stated at page 392: "Petitioner contends that the injury did not arise out of or in the course of the employment, and that the injury was not proximately caused by the employment. That contention is sustained. Miss Brown [the employee] had finished her work for the day, had gone home and changed her clothing to beach apparel, had eaten dinner, left petitioner's premises and, at the time of the accident, was on a pleasure trip. While petitioner permitted employees, after working hours, to use its motor vehicles for pleasure, it did not require them to do so. Miss Brown had complete freedom in deciding whether she should go on a pleasure trip, in selecting an escort and driver, and in deciding where to go. The mere fact that she was riding in a vehicle owned by petitioner at the time of the accident is not sufficient to create liability under the Workmen's Compensation Act."

█ Respondents finally argue that in taking her recreational walk, Mrs. Elliott was following her medical adviser's recommendation as to a suitable exercise, and so was conditioning herself to perform better the duties of her employment. But if such theory should be adopted as sufficient to establish the necessary causal connection with the employment, then any injury sustained by an employee in a recreational activity would be compensable. Precisely the same contention was unavailingly urged in the case of *Wilson* v. *General Motors Corp.*, 298 N.Y. 468 [84 N.E.2d 781]. There the employee was injured while participating in a softball game as a member of a team entered in a league consisting entirely of employees of the same employer. The games were played on the employees' own time in a public park some distance from the employer's plant. In holding that neither the fact that the employer gave its permission to employees to participate in the games, and even cooperated to some extent in the program, nor the fact that such recreational activity might indirectly redound to the employer's benefit as a health measure for the employees would authorize a compensation award, the court stated at pages 783-784: "These ball games, the record makes plain, were out-of-hours, off-the-premises, personal diversions of the men, and were not only optional with the employees but were exclusively for their own recreation and indulgence, without business advantage to the employer. The games were neither initiated nor sponsored by the employer, in no way con-

nected with its affairs, and in no manner subject to its control. Even if the company had so desired, it could not have halted the ball playing or changed the program in any way. In other words, totally lacking is any basis for an inference that it controlled the activity or sought to compel or induce any employee to participate in it. . . . Too tenuous and ephemeral is the possibility that such participation might perhaps indirectly benefit the employer by improving the workers' morale or health or by fostering employee good will." While recognizing its duty to construe liberally the coverage of the state Workmen's Compensation Act and the liability for injury "arising out of and in the course of" the employment, the court nevertheless concluded that on the record before it "the granting of a compensation award would not only do violence to the letter of the statute but would offend against its spirit, by penalizing employers who, without prospect of profit or benefit, co-operate in enabling their employees to engage in social or athletic recreation on their own time and away from the company premises." (P. 784.)

As the record here stands, the following facts are determinative of the noncompensability of the claim in question: Mrs. Elliott was injured while walking on a public road as an act of recreational diversion of her own free choice and when off-duty from her work. Such circumstances do not reasonably permit an inference of a "causal connection" between the injury and the employment in support of a compensation award. (See *Liberty Mutual Ins. Co.* v. *Industrial Acc. Com., ante,* p. 512 [247 P.2d 697].)

The award is annulled.

Gibson, C. J., Edmonds, J., Traynor, J., and Schauer, J., concurred.

CARTER, J.—I dissent.

The facts here are simple. They are more favorable to the employee, however, than portrayed by the majority opinion.

The injured employee, Mrs. Elliott, was working as housekeeper for Mrs. Hubbard at the latter's home. Although she said her hours were eight a day, no definite working hours were fixed. She lived at the home and had her meals there. Mrs. Hubbard's doctor had advised her to take a walk every day and it had always been her custom to do

so. She would take her stroll either after the noonday or evening meal, depending upon when she could get away. Mrs. Hubbard was aware of this practice and may be said to have acquiesced in it. On the day of the accident, Mrs. Hubbard was ill in bed and *told* Mrs. Elliott to have her walk after the evening meal rather than earlier. Mrs. Hubbard also told her not to be gone long, giving rise to the inference that in view of her illness Mrs. Elliott was still working and on call. Contrary to the assertion in the majority opinion, that inference is not refuted by Mrs. Elliott's testimony that after she had finished her work she went for a walk, as that was merely a way of saying that she had the opportunity at that time to take the stroll rather than that she was no longer subject to Mrs. Hubbard's call and had to return soon to attend her. Mrs. Elliott emptied the garbage in a receptacle in the driveway by Mrs. Hubbard's house and walked into the street which had no sidewalks. When about 50 feet from the driveway and in front of adjoining lots which Mrs. Hubbard had "sold" but for which she had not received her money, she stepped aside to avoid a car travelling on the road. She fell, she said, in the "lots."

From the evidence the commission was justified in deducing that the injury occurred on the premises of the employer or that it occurred while Mrs. Elliott was in effect "on the job." In either case there is no question that the injury occurred in the course of the employment. In addition, however, the injury clearly falls within the rule, that injuries arising out of activities for the personal needs, comfort and welfare of the employer are compensable. Mrs. Elliott's walk was a habit and custom concurred in by her employer and in the instant case was expressly authorized. The cases clearly support an award of compensation under that rule.

In *Papineau* v. *Industrial Acc. Com.*, 45 Cal.App. 181 [187 P. 108], an injury was held compensable where it occurred while the employee, a bootblack, was away from his employer's premises to obtain a bottle of milk to drink with his lunch; it was his custom, with the approval of his employer, to get the milk. The court said (p. 182): "Upon these facts petitioner insists that the injury did not arise out of, and in the course of, the employment of Miles. Three reasons are assigned for this contention: First, that the claimant had left the premises of the petitioner on a personal errand and was not engaged in the performance of

any service for his employer; second, that the injury was not due to a risk incident to his employment, but caused from a peril common to all persons using the elevator; and, third, that the injury was caused by a joke perpetrated by the operator of the elevator.

"While it is sometimes difficult to distinguish the line between an injury arising out of, and in the course of, employment and one which does not so arise, nevertheless, the facts here presented bring the case within the rule announced in the opinion in *Archibald* v. *Ott*, 77 Va. 448 [87 S.E. 791, L.R.A. 1916D, 1013], wherein it is said: 'Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment.' In leaving the barber-shop, with the knowledge, consent, and approval of his employer, for the purpose of procuring a bottle of milk to use with his lunch, as was his custom, the claimant, while ministering unto himself, was, nevertheless, in a remote sense, in that one who works must eat, engaged in an act which contributed to his efficiency and furtherance of the work. Thus compensation has been awarded for an accident suffered where the employee had left the performance of his work to procure drinking water. (*Keenan* v. *Flemington Coal Co.*, 5 F. 164, St. of Sess.) Other cases sustaining the rule are cited in the opinion in *Whiting-Mead Commercial Co.* v. *Industrial Acc. Com.*, 178 Cal. 505 [173 P. 1105, 5 A.L.R. 1518], wherein an award for an injury resulting to an employee from a burn sustained from igniting a turpentine-soaked bandage on his hand while lighting a cigarette for his personal use, was upheld. The fact that the elevator in question was controlled by the owners of the building is unimportant, for the reason that the tenant had the right, as an appurtenance of the premises leased by him, to the use of the elevator for himself and employees in going to and from the barber shop, and hence the elevator was a part of the employer's premises. . . .

"That the elevators were for the use of all persons having occasion to use them as a means of access to the building could not affect claimant's right to the award. *A like argument might be made with reference to injuries sustained by persons whose employment requires them to travel upon lines of railway or upon the public streets*, right to

recover for which is supported by ample authority.'' (Emphasis added.) Doubt was cast upon that case by *California Casualty Indemnity Exchange* v. *Industrial Acc. Com.* 190 Cal. 433 [213 P. 257], but there the court took an ultra-conservative attitude which has since changed except for an occasional decision such as here. (See 22 Cal.L.Rev. 581, 582.)

In the case at bar, where the employee went no more than 50 feet on the fronting street from the employer's driveway for a walk which she was directed to take by her employer, we have a stronger case than the Papineau case.

In *Western Pipe & Steel Co.* v. *Industrial Acc. Com.*, 49 Cal.App.2d 108 [121 P.2d 35], the employees were permitted to leave their work for an undesignated half hour to obtain dinner, while they were working overtime. Their pay covered the half hour. An employee left his work and drove to a place some distance from his employer's premises to get his dinner and was killed while crossing the street. In holding the death compensable the court said (p. 110) : ''The petitioner contends that the law is well-settled that an employer is not responsible for the act of, or injury to, an employee while the latter is off the premises for the purpose of securing his personal meals. There are many cases holding that injuries received by an employee while on his way to or from meals are normally not compensable. [Citations.]

''The basis of some of the cases which deny the employee compensation for injuries received while going to or from meals is that while the employee is on such an errand he is not rendering any service for his employer. Other cases recognize that this is merely one part of the so-called 'going or coming' rule—i.e., that injuries received while going to or coming from work normally do not arise out of, nor occur in the course of, the employment. There are, of course, many exceptions to both rules. *It is not indispensable to recovery that at the time of the injury an employee must be rendering service to his employer. Acts of the employee for his personal comfort and convenience while at work, such as taking a drink of water, lighting a cigarette, warming himself, etc., do not interrupt the continuity of the employment. This exception is not limited to acts performed on the employer's premises.* In *Western Pac. R. R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413 [224 P. 754], a messenger was struck by an automobile while returning on his bicycle to his place of employment from his home where he had

gone to get his raincoat when a storm came up while he was outside performing service for his employer. The injury was held compensable. In *Leffert* v. *Industrial Acc. Com.*, 219 Cal. 710 [28 P.2d 911], the deceased employee, a salesman, was required to report each morning at the employer's plant to receive directions for the day. After getting their instructions, salesmen customarily had a cup of coffee together at a nearby coffee shop. On the morning in question the salesmen, on arrival, found the plant on fire and were directed to report at another office to receive instructions. Before going to this office the employees followed their usual custom of having a cup of coffee. The deceased, after finishing his coffee, announced his intention of returning to the burning building to retrieve his overcoat. While crossing the street to the building he was hit by an automobile. It was held that the injury was compensable, and an award denying recovery was annulled. (See, also, *Whiting-Mead Commercial Co.* v. *Industrial Acc. Com.*, 178 Cal. 505 [173 P. 1105, 5 A.L.R. 1518].) . . . The employer apparently realized that men could not be expected to work at their highest efficiency without food during this overtime period, and for that reason agreed that they should have half an hour off for the purpose of securing their dinner.''

In the case at bar Mrs. Elliott was hired by the month; her pay consisted of cash and board and room; she had no fixed hours of work and was authorized to go for a walk. Her compensation apparently covered that period. If an injury which occurred while getting dinner away from the employer's premises with his permission is compensable, then the same must be said for an injury received while taking a walk at the direction of the employer.

In *Whiting-Mead Commercial Co.* v. *Industrial Acc. Com.*, 178 Cal. 505 [173 P. 1105, 5 A.L.R. 1518], the court affirmed an award for an injury received while the employee was smoking, and cited with approval various situations such as getting a drink of water, or beer, refreshment and responding to the call of nature.

In *Goodrich* v. *Industrial Acc. Com.*, 22 Cal.2d 604 [140 P.2d 405], we held an injury to be compensable which occurred when the employee went home to inform his wife that he would be working all night. We stressed the proposition that an injury occurring while an employee is administering to his personal needs and welfare need not, to be compensable, occur on the employer's premises. We summarized the cases

on this question as follows (p. 607): ''There are many acts of an employee for his personal convenience, comfort or welfare, the doing of which do not necessarily take him out of the course of his employment, *even though done away from the premises of the employer. (California Cas. Ind. Exch.* v. *Industrial Acc. Com.*, 21 Cal.2d 751 [135 P.2d 158].) Various instances of that character have been considered by the appellate courts: Drinking wine because of indisposition (*Elliott* v. *Industrial Acc. Com.*, 21 Cal.2d 281 [131 P.2d 521]; smoking (*Whiting-Mead Com. Co.* v. *Industrial Acc. Com.*, 178 Cal. 505 [173 P. 1105, 5 A.L.R. 1518]); going to obtain a slicker to wear in the performance of his duty (*Western Pacific R. R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413 [224 P. 754]); going to obtain an overcoat (*Leffert* v. *Industrial Acc. Com.*, 219 Cal. 710 [28 P.2d 911]); going into a hallway to obtain fresh air (*F. W. Woolworth Co.* v. *Industrial Acc. Com.*, 17 Cal.2d 634 [111 P.2d 313]); going to obtain water for a fellow employee who had fainted (*County of Los Angeles* v. *Industrial Acc. Com.*, 89 Cal.App. 736 [265 P. 362]); returning from purchasing a package of cigarettes for employee's own use (*Western Pipe etc. Co.* v. *Industrial Acc. Com.*, 49 Cal.App.2d 108 [121 P.2d 35]); domestic servant sewing a hem on her dress (*Employers' etc. Corp.* v. *Industrial Acc. Com.*, 37 Cal.App.2d 567 [99 P.2d 1089]).''

In *Graf* v. *Montecito County Water Dist.*, 1 Cal.2d 222 [26 P.2d 29, 34 P.2d 138], the employee was injured while riding on the employer's train operated for employee's recreation and boarded after the work day had ceased. The court held injury not compensable, but Mr. Justice Shenk dissented, pointing out that the train was the employer's premises.

The majority relies mainly on the ground that the injury occurred off the employer's premises. As pointed out hereinabove, there is evidence to the contrary, but even if there were not, such is not the rule. The cases heretofore discussed show that an act done for the personal convenience and welfare of the employee *need not be done on the employer's premises* to authorize compensation where the act done is customary and with the employer's permission.

While the courts are required by statute (Lab. Code, § 3202) to liberally construe the Workmen's Compensation Act, even a rational, nonliberal construction would sustain the award in this case.

I would, therefore, affirm the award.