Brewster, J.
The General Electric Athletic Association is a membership corporation. It is duly organized, “ To promote recreational, educational and social activities among the employees of the General Electric Company at Schenectady, N. T.; ” and, <£ to maintain a clubhouse and grounds and to do such other things as are necessary to carry out the purposes aforesaid.” The control and management of the association and its property is vested in its board of directors who are *424 chosen at annual elections by the members. A past or present employee status with the company, or work placement at its Schenectady plant, is a requisite qualification for membership in the association. Claimants, while such members, were injured, on separate occasions, while participating in a game of soft baseball played upon the athletic grounds of the association. The question is whether their injuries may, under the evidence, be held to have arisen out of and during the course of their employment by the General Electric Company.
Claimants, employees of the company, were on off time when injured. Tedesco was a tool and die maker and Rodgers a patent attorney. There is no evidence that any company employee participated in any of the various activities, functions or affairs conducted or sponsored by the association on its grounds on company time with the knowledge or consent of the employer. Members of the association pay dues to it and, of course, are entitled to access and the use and enjoyment of its grounds and facilities. The association hires, pays, and controls its own managing heads and employees and arranges, sponsors, and supervises all its activities and affairs. The grounds it occupies, rent free, are owned by the General Electric Company. These consist of about ten acres of land improved with a commodious and well-equipped clubhouse and divers playgrounds for various athletics. They are located in a north-easterly sector of lands comprising or adjoining the company’s Schenectady plant, and are separately fenced by a substantial “ cyclone-fence ” enclosure within which the company conducts no activity save such aid and assistance as it has occasionally afforded to the association. The proof is that while the company has given the association its friendly interest and at times material assistance, it in no way exercised control over or influence upon its employees in joining it. Application for membership is wholly optional and voluntary, and final acceptance is made by the association’s board of directors, which consists of fifteen members, as to which its by-laws provide that one of them shall be appointed by the “ Manager of the Schenectady Works ” of the company who “ shall represent the Company * * * ”, but at least two negative votes are essential to reject an application for membership. About 7% of the company’s employee personnel at Schenectady are members of the association.
There is no evidence that the company took any part in the organization of the association, except what perhaps may be inferred from the proof of the charitable interest it has manifested toward and the aid it has afforded to it. These atten *425 tions are evidenced in several particulars, viz.: It furnishes the association its grounds and facilities rent free; when deficits have arisen it has forgiven, temporarily at least, charges for heat and electricity; it opens its plant newspaper to publication and advertisement of the association’s doings; on one occasion, in 1946, it made it a $3,000 donation or loan because of loss of revenue due to a strike, and there is evidence that some solicitation to membership and make-up of teams took place in the course of some of the members’ employment and that this was tolerated. There is also evidence that when revenues exceeded operating expenses the overplus was paid to the company on account of its prior advances.
The activities of the association and its members appear to be many and varied. Athletic teams are organized and formed into leagues and contests scheduled and held. In these formations the pattern of the members’ individual employee allocation is rather generally followed. That is, teams are generally formed from members who are employed in a given building or section and their team is generally so named or designated. The team members furnish their own uniforms and the association provides all other needed supplies and equipment. The formation of teams and the scheduling of their play and, in general, all the athletic activity which takes place is arranged and supervised entirely by the association and its members, and this applies likewise to all the many social and other activities engaged in on the premises. The record discloses the hand or influence of the appellant employer only in the friendly interest it manifests and the aid it affords, as aforesaid, in assisting the association to achieve its corporate purposes. The fact that it may be said to have accepted an arrangement whereby it had, through representation, one voice in the association’s board of directors cannot obscure the separate corporate entities. From the way and manner the association independently functions and manages its own affairs, neither may the interest which the company takes in it, the aid and assistance it has rendered thereto, nor, what may be said to be a sort of a natural position of dominance which, perforce the circumstances, it occupies — none of these, singly or in the aggregate, may be said to render the association a creature of the company, in agency or otherwise. (Berkey v. Third Ave. Ry. Co., 244 N. Y. 84; Lowendahl v. Baltimore & Ohio R. R. Co., 247 App. Div. 144.)
I think it may not be gainsaid but that claimants were injured because they voluntarily indulged in a sport for their individual enjoyment, profit and gratification of their zest for the game, *426 and not because of their employment by the appellant. Their employee status only founded their qualification for membership in the association. Such, however, was a rule of that corporate entity, and it, solely, provided the facility and afforded the privilege in the enjoyment of which the injuries were sustained. But even so, comes the question whether there is any evidence upon which to base a finding that the games in which the injuries were sustained were so related to or integrated in the employer’s business or business policy that, in participating in them, claimants were in the course of their employment by the appellant.
For injuries to employees while at play or while enjoying recreation on the employer’s business premises during a temporary cessation of work, awards were upheld in Matter of Piusinski v. Transit Valley Country Club (259 App. Div. 765, affd. 283 N. Y. 674); Matter of Bowen v. Saratoga Springs Comm. (267 App. Div. 928), and Matter of Brown v. United Services For Air, Inc. (273 App. Div. 932, affd. 298 N. Y. 901). There the rationale which has been stated is that the recreation was so “ bound up with the employment ” or the employer’s interest that the activity which occasioned the injury was deemed to have arisen out of and in the course of the employment. (Matter of Wilson v. General Motors Corp., 298 N. Y. 468, 474.)
In Matter of Kenney v. Lord & Taylor, Inc. (254 N. Y. 532); Matter of Holst v. New York Stock Exchange (252 App. Div. 233); Matter of Chadwick v. New York Stock Exchange (252 App. Div. 714); Matter of Huber v. Eagle Stationery Corp. (254 App. Div. 788, motion for leave to appeal denied, 278 N. Y. 739), and Matter of Fishman v. Lafayette Radio Corp. (275 App. Div. 876), awards were upheld for injuries sustained by employees while participating in social events or athletic contests which were arranged or directly sponsored by the employer and which, the evidence showed, bore a relation of interest to the employer’s business in a definite and concrete manner.
The undisputed facts in the case at bar differ from those above cited, wherein awards were upheld, in that interposed between the activities which produced claimants’ injuries and their employment by appellant is a legal entity, separate and apart from their employer, the existence and functioning of which directly and solely afforded the occasion for the cause of the activity productive of the injuries. That entity, the membership corporation, may not, in my view, be said to have had “ no will, mind or existence of its own ”, and to have been operated by the appellant-employer as a mere department of its business. Indeed, the undisputed evidence is to the contrary. *427 The fact that on occasion and for its well being it may have accorded deference to the wishes of claimants’ employer was but a natural incident in view of its situation. It did not, as a matter of law, thereby lose its identity, and there is naught to show that in so doing it released or lessened its power to control and govern its own affairs.
But did the company, in fostering the association so benefit by the latter’s corporate existence and the activities of its members — particularly the playing of the injury producing soft baseball games — that it may be said to have brought the participation of the association’s members in the enjoyment of its privileges, into the realm of their employment by the company? The employer’s interest in the association and such help as it gave to it may, remotely, have fostered wholesome relations with the small percentage of its employees who were members. Some indirect benefit may be found to have accrued to the company in a physical toning up of those members. There is no evidence of other “ business advantage.” There is naught to show that either the existence and functioning of the association or the pursuits of its members therein was used by the company to advertise its business. All that may justly be said in that connection is what was said in Matter of Wilson v. General Motor Corp. (supra, p. 473), viz.: “ Nor is it of operative consequence that the employer acquiesced in, or contributed some financial aid to, such activities. The slight support thus given by the employer, without attendant advertising or consequent business advantage, should be accepted for what it really was, a gratuitous contribution to its employees’ social and recreational life.” In the case at bar the employer contribution was less direct than in that case. Here the contribution was to an impersonal legal entity formed by members who govern it and from which they, including the claimants, at their own free choice, drew down its benefits. Claimants’ injuries, therefore, may not be said to have arisen out of and in the course of their employment and the decisions and awards in their favor should be reversed and their claims dismissed.