217 P.2d 592

PRIDGEN et al. v. INDUSTRIAL COM-
MISSION et al.

No. 5304.

Supreme Court of Arizona.

May 1, 1950.

Conner & Jones, Tucson, for petitioners.

H. S. McCluskey, Phoenix, and Robert E. Yount, Phoenix, of counsel, for respondent.

UDALL, Justice.

Petitioners, Elinor K. Pridgen and Deana Jo Pridgen, made application to The Industrial Commission of Arizona for compensation on account of the death of their husband and father, Joseph C. Pridgen. The latter, who was of the age of 29 years, met his death as the result of an accident on July 18, 1949. The decedent was then, and for some time previously had been, in the employ of respondents Wm. Fitchett and Eula Rebecca Fitchett, his wife, who were doing business in the City of Tucson under the trade-name of the Arizona Glass & Mirror Co. The respondent commission was insurance carrier for the employers. After a hearing the Commission determined that this was a noncompensable case. It drew a legal conclusion from the testimony

that there was no evidence that the personal injury by accident resulting in decedent's death arose out of and in the course of his employment and hence an award was entered on September 15, 1949, denying death benefits to petitioners, which award it affirmed on rehearing.

The sole assignment is that the Commission erred in finding decedent's death did not occur as the result of an accident arising out of and in the course of his employment for the reason that the undisputed evidence is all to the contrary. The proposition of law is advanced that where an employee is injured or killed while performing an act beyond the usual scope of his employment, which act is being done at the direction or request of his employer, then any resultant injury or death from an accident while so performing such act arises out of and in the course of his employment as provided for in section 56-931, A.C.A. 1939.

The vital evidence in the case all came from the lips of a fellow employee, the employers and their manager son, Dan Louis Fitchett. In reality there is no conflict in the testimony to be resolved. Principally the question presented is whether there is any substantial evidence tending to reasonably support the legal inference or conclusion drawn by the Commission from these undisputed facts. For a comparable situation as to the state of the record see Pierce v. Phelps Dodge Corp., 42 Ariz. 436, 26 P.2d 1017 (syl. 1 & 2).

To determine the matter it is therefore necessary that we recite in some detail the facts developed at the hearing. The respondent employers in conducting their principal business in the city of Tucson, the nature of which is indicated by the trade-name, employed several persons including decedent, his classification being that of journeyman glazier. The Fitchetts also owned and operated a small livestock ranch near Oracle, Arizona, some 30 miles north from Tucson. There were no resident employees working at the ranch and it was principally cared for by the owners with occasional help from their shop employees. The business of both the ranch and shop, however, was carried on from the same office in Tucson. At the time of the fatal accident the owners were absent on vacation and both the shop and ranch operations were being managed by their son, Dan Fitchett.

On the day preceding the accident, which was a Sunday, Dan Fitchett had been to the ranch where he discovered that a valuable colt (filly) had suffered a severe barbed wire cut on the throat. Alone, he was unable to get the animal into the corral. Upon returning to town he called a family friend who was well acquainted with horses and the latter advised him to contact a veterinarian to go to the ranch to treat the colt. This he did, making an appointment to meet the veterinarian at the ranch Monday morning at 10:00 A.M. Sunday night or early Monday morning it rained in Tucson and

when the men reported for work on Monday it was deemed inadvisable to proceed with the usual work of installing glass due to atmospheric conditions and wet sash. Other jobs prevented Dan from going to the ranch as planned and according to his testimony he told Jack Pender, a fellow employee of Pridgen, what had happened at the ranch.

"A. * * * I told him we had to go up and help the vet take care of the colt.

"Q. Did you ask him if he wanted to go? A. Yes. * * *"

Then as to the decedent, Joe Pridgen, accompanying Jack the manager further testified:

"Q. Well, then, when he (decedent) suggested to go up to the ranch instead of your going, you, of course, had no objections? A. Well, he didn't suggest that he go up. He suggested that someone go up to help Jack.

"Q. He suggested someone go up and you asked him, I believe, if he wanted to go? A. I asked him if he could help Jack.

"Q. He said he would? A. That's right."

Jack Pender corroborated the manager's testimony, stating that "we were sent up there to do a job."

Upon arriving at the ranch the two employees proceeded to round up the horses, including the injured colt. While attempting to corral them, the horses broke loose and in an effort to head them off the horse ridden by Pridgen, while running, stumbled and fell fatally injuring him.

The commission in rejecting the claim for compensation obviously drew the unwarranted inference from these facts that this trip to the ranch was a "lark" for the enjoyment and pleasure of decedent and his companion and was not a part of the duties of their employment. It makes much of testimony that decedent liked to go to the ranch, had gone there previously on weekends and in fact more than a year previous had spent a part of his honeymoon there. Furthermore, it unjustifiably argues that the quoted testimony does not disclose an order or direction by the employers for the performance of an "act"—to proceed to the ranch to aid in treating the injured colt—but rather that the evidence shows the decedent had volunteered solely to further his own pleasure in riding horses.

Certain other controlling facts need to be noted. The record shows that it was customary on the part of respondent employers to give all of their regular employees a full week's work even though this involved doing various odd jobs such as maintenance work around the shop and on the equipment as might be directed. For instance it was shown that decedent, though a journeyman glazier, on prior occasions and at the direction of his employers, had done certain work at his employers' residence such as fixing coolers, windows that were stuck, as well as doing work on the truck and fixing a rack at the shop. The

**152**

employers testified that on this particular occasion when decedent met his death he was being paid his regular hourly wage. The workmen's compensation policy issued to the respondent employers in this case not only covered the glass and mirror operations but there was a 0006 rider attached to the policy covering their ranch operations as well.

While it is true that decedent was fatally injured while in the performance of an act outside of his regular duties, such fact does not constitute grounds for denying compensation, where, as here, said act was being performed under the direction of the employer. This principle is well stated in the somewhat comparable case of O'Rourke v. Percy Vittum Co., 166 Minn. 251, 207 N.W. 636, 638: "But an employer may enlarge or extend the scope of the employment, and an employee who, at the direction of his employer or of a superior to whose orders he is subject, performs services outside the duties of his usual employment, and performs them in consequence of the existence of the relation of employer and employe, and as incidental to the employment, is within the protection of the act while performing such services." See also Ocean Accident & Guarantee Corp. v. Industrial Comm., 32 Ariz. 265, 257 P. 641; Tooley v. Weisbarth, 66 Ariz. 230, 186 P.2d 638; Stakonis v. United Advertising Co., 110 Conn. 384, 148 A. 334.

The proposition of law advanced by petitioner, as set forth at the beginning of this opinion, is accepted by us as being a correct statement of the law governing a situation such as that presented by this record.

From an examination of the record in this case we feel constrained to hold that the facts do not reasonably support the inference drawn or legal conclusion reached by the commission in denying compensation. It appears to us that the only proper inference to be drawn from the facts is that the decedent suffered an injury by an accident arising out of and in the course of his employment as a glazier.

Award set aside.

LA PRADE, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concurring.