457 P.2d 750

**Ernesto M. TORRES, Father, and Francisca Rodriguez de Torres, Mother, In the Matter of Maria Antonietta Torres, Deceased, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Leonard M. Singer (Murray Auto Radio Center), Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. I CA–IC 233.**

Court of Appeals of Arizona.
Division 1, Department A.
Aug. 5, 1969.

Edgar M. Delaney, Phoenix, for petitioners.

Michael A. Lasher, Jr., Chief Counsel, for The Industrial Commission of Arizona.

Robert K. Park, Chief Counsel, by William E. Smith, Phoenix, for respondents Employer and Carrier.

STEVENS, Judge.

Maria Antonietta Torres met her death by drowning. This claim is processed by her surviving parents. The record contains evidence which could support a finding of partial dependency by the parents. This issue was not decided by the Commission and is not decided by this Court. The Commission found that Miss Torres' death "was not the result of an accident arising out of and in the course of the decedent's employment with the Murray Auto Center."

Miss Torres was a native of the Republic of Mexico and a citizen of Mexico. Mr. and Mrs. Singer are Phoenix residents and at the times in question were the sole proprietors of the Murray Auto Radio Center, herein referred to as the Center. The Singers owned and occupied a private dwelling in Phoenix. Their children lived with them. Their property was improved with a private swimming pool, the place of Miss Torres' untimely death.

In 1959, the Singers secured a workmen's compensation policy from the Commission insuring their employees at the Center. The application and the policy expressly excluded coverage for domestic help. This is a permissible exclusion under A.R.S. § 23–902, subsec. A. Insurance coverage for domestic help is available if coverage is desired.

Prior to April, 1964, Miss Torres lived in Mexico. Mrs. Singer testified:

"A. Well, we employed her. We got her through the Counsul (sic) of Mexico to come up. She requested to come and work for us. She had come to visit prior to our hiring her and when all the necessary papers were resolved she came up to be employed by us."

We are not informed as to the content of "the necessary papers" and we assume that the papers would not aid either the Commission or this Court in resolving the issues now under consideration.

In April, 1964, about the date of her 28th birthday, Miss Torres came to Arizona and became a resident in the Singer home. At the Singers' home she had her own room and bath. She ate with the family, Mrs. Singer preparing the meals. Miss Torres had certain assigned household duties. The members of the Singer family had household responsibilities. Mr. Singer and a son cared for the pool. One of the rules of the house was that no one swam alone in the pool. Miss Torres could not swim. She was expected to be at the home five and a half days a week. She was free to be absent or to remain in the home on weekends if she desired. After Miss Torres' death, Mrs. Singer estimated the value of her room and board to be $135 a month. No money was paid to Miss Torres for her household services, and the value of the room and board were not reported for income tax purposes or for compensation insurance purposes.

Not long after beginning her stay with the Singers, she commenced her services at the Center. These were basically janitorial in nature. Mrs. Singer assigned

some clerical responsibilities to Miss Torres. She worked at the Center one or two days a week and occasionally three days in a single week. For this phase of her life, Miss Torres was paid $120 a month subject to the usual withholdings. Compensation insurance premiums were paid on these earnings.

In July, 1965, the Singer children were away from the home and Mr. and Mrs. Singer planned to be absent for a week. Mrs. Singer requested that Miss Torres spend this time on a visit to Mexico. She declined. Miss Torres' sister was in Phoenix and it was suggested that the sister stay with Miss Torres at the Singer home. Miss Torres declined. She knew that the Singers planned to board their dog during their absence and to employ care for the pool. Miss Torres insisted that she desired to stay at the Singer home and volunteered to care for the dog and the pool. Specific pool instructions were given to her, some of which were to be performed after the sun was down and before darkness set in. Shortly after 5 in the afternoon of 28 July, 1965, Miss Torres was discovered in the pool by a neighbor. Efforts to revive her were without success. There was evidence which might possibly indicate a call for help from the Singer yard around 12:30 in the afternoon of that day. Miss Torres' sister was unable to reach her by phone in the mid-afternoon of that day and she called the neighbor, the call leading to the discovery of the tragedy.

An employee may sustain injury or death "arising out of and in the course of employment" while performing tasks for the personal benefit of the employer even though these tasks do not relate to the usual responsibilities of employment. Ocean Accident and Guarantee Corp., Limited v. Industrial Commission, 32 Ariz. 265, 257 P. 641 (1927); Tooley v. Weisbarth, 66 Ariz. 230, 186 P.2d 638 (1947); and Pridgen v. Industrial Commission, 70 Ariz. 149, 217 P.2d 592 (1950). We are called upon to decide whether the evidence brought Miss Torres within this principle.

We agree with the Commission that it did not.

In our opinion, there was a dual relationship between Miss Torres and the Singers, albeit that probably one would not exist without the other. Nevertheless each was dependent of the other so far as "employment" was concerned. No question is raised as to Miss Torres' status while physically present and working at the Center.

What was her status while at the Singer home? We need not decide whether she was a "domestic servant" nor do we negate that status. If she was a domestic servant, she was not covered by the workmen's compensation insurance. If she was not a domestic, then she was not "employed" in relation to her status at the Singer home and would not have met her death in the course and scope of her employment. We have no difficulty in recognizing a dual status situation wherein the relationship between a person who performs acts for the benefit of another may at times be an industrially insured employee and may at times be a person who comes within the exclusion of A.R.S. § 23–902, subsec. A or occupies a status of not being an employee.

There is not the slightest suggestion that Miss Torres took her own life. Holding as we do, that Miss Torres was not covered by workmen's compensation while performing her duties at the Singer home and particularly during this vacation period, we need not consider the rules which are to be applied to determine the issue of "scope and course of employment" where the death occurs without witnesses and under circumstances which might lead the trier of fact to rule in favor of or against an employment status at the time of death. See Pridgen, supra; Martin v. Industrial Commission, 73 Ariz. 401, 242 P.2d 286 (1952); Harrington v. Industrial Commission, 84 Ariz. 356, 328 P.2d 311 (1958); Faulkner v. Industrial Commission, 4 Ariz.App. 567, 422 P.2d 398 (1967) and Johnson v. In-

dustrial Commission, 5 Ariz.App. 185, 424 P.2d 833 (1967).

In our opinion the evidence before the Commission reasonably supports the findings and award which denied compensation. The award is affirmed.

DONOFRIO, P. J., and CAMERON, J., concur.