[Civ. No. 35722. Second Dist., Div. Five. June 25, 1970.]

NORTH AMERICAN ROCKWELL CORPORATION,
SPACE DIVISION, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD and
ANDREW H. SAKSA, Respondents.

156

---

## COUNSEL

Kirk J. Daly and Robert S. Goldberg for Petitioner.

Rupert A. Pedrin, Nathan Mudge, Levy & Van Bourg and Richard J. Cantrell for Respondents.

---

## OPINION

**SELBER, J.**\*—In this proceeding an employer seeks annulment of an award of workmen's compensation to an employee who sustained injury when he was struck by the automobile of a coemployee in a parking area provided for the use of employees as they were assisting a third employee to start his stalled vehicle. We granted review to consider the question of whether injury sustained under these circumstances may properly be charged to industry as "arising out of and in the course of employment." We have reached the conclusion that the injury is compensable and the decision of the appeals board is correct.

The pertinent facts, established by stipulation, are as follows. At 4 p.m. on October 16, 1968, Andrew H. Saksa, A. Dwan and D. E. Kinney completed their work shift for petitioner and within a reasonable period of time thereafter proceeded to their respective automobiles in the company parking lot adjacent to the plant. Dwan's automobile was stalled due to a dead battery. Kinney drove his vehicle to the front of Dwan's. Saksa stood between the two vehicle attaching jumper cables when Kin-

---

\*Assigned by the Chairman of the Judicial Council.

ney's vehicle suddenly lurched forward, pinning Saksa between the bumpers.[1] As a result, Saksa sustained injury to his legs for which compensation was awarded.

The stipulated facts do not show whether the stalled vehicle blocked the exit of other vehicles or whether petitioner contemplated any other use of the premises with which delay in the removal of the stalled car might have interfered. Nor do they show whether the three employees had any particular association or relationship, either personal or work-related, aside from their common status as employees and their common use of the area for parking.

■ In finding the injury compensable, the appeals board relied on the general rule that injuries sustained by an employee while going to or from his place of work upon premises owned or controlled by his employer are deemed to arise out of and in the course of the employment. On the basis of this rule it has been consistently held that the protection of the compensation law extends to injuries sustained by an employee in a parking area maintained by the employer for the use of employees, the theory being that a contract of employment which contemplates parking by employees on the premises must necessarily contemplate their entry and departure via the parking area and a reasonable interval of time and space for doing so. (*Greydanus* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 490 [47 Cal.Rptr. 384, 407 P.2d 296] [injury in collision between employee's vehicle and vehicle on highway entrance]; *Pacific Indem. Co.* v. *Industrial Acc. Com.* (1946) 28 Cal.2d 329 [170 P.2d 18] [injury in collision between two employees' vehicles]; *California Cas. Indem. Exch.* v. *Industrial Acc. Com.* (1943) 21 Cal.2d 751 [135 P.2d 158] [injury in fall when employee caught heel in hem of dress getting out of vehicle after return from personal errand]; *Van Cleve* v. *Workmen's Comp. App. Bd.* (1968) 261 Cal.App.2d 228 [67 Cal.Rptr. 757] [injury when employee lost footing reaching for coat in getting out of vehicle]; see also *Saala* v. *McFarland* (1965) 63 Cal.2d 124 [45 Cal.Rptr. 144, 403 P.2d 400] [injury to employee while on foot when struck by coemployee's vehicle] and *McIvord* v. *Savage* (1963) 220 Cal.App.2d 128 [33 Cal.Rptr. 740] [injury to employee riding as passenger in collision between coemployees' vehicles].) However, in none of these cases does it appear, as here, that the employee was not at the time of injury directly advancing his own entry or departure from the premises.

■ Petitioner contends that the act of assisting the coemployee to

---

[1]We assume the injury occurred within 13 minutes from the time Saksa completed his work shift as the accident was reported to the police at 4:13 p.m.

start his vehicle, being unnecessary to effect Saksa's own egress from the premises, cannot be considered as arising out of and in the course of employment under the rule of the parking lot cases. It further asserts that the action was for purely personal purposes of the employees and without benefit to it. Respondents take the position that in light of the environmental conditions of the employment the activity was normal, proper and reasonably to be expected and therefore within the contemplation of the employment contract. We agree.

Every human act has a personal aspect. No contract of employment can list every act that an employee may or may not do in the course of his employment. Purely personal activities on the employment premises which reflect an intent to abandon the employment are not compensable. █ In drawing the line between those acts which shall be deemed work-related and those considered to be purely personal, it is generally stated as a basic principle that an employee is in the course of his employment when he does those reasonable things within the time and space limits of the employment which his contract with his employer expressly or impliedly permits him to do. (*Industrial Indem. Exch.* v. *Industrial Acc. Com.* (1945) 26 Cal.2d 130, 137 [156 P.2d 926]; *Hartford Acc. & Indem. Co.* v. *Industrial Acc. Com.* (1927) 202 Cal. 688, 691 [262 P. 309, 58 A.L.R. 1392].) █ "In determining whether a particular act is reasonably contemplated by the employment the nature of the act, the nature of the employment, the custom and usage of a particular employment, the terms of the contract of employment, and perhaps other factors should be considered. █ Any reasonable doubt as to whether the act is contemplated by the employment, in view of this state's policy of liberal construction in favor of the employee, should be resolved in favor of the employee." (*Employers' etc. Corp.* v. *Industrial Acc. Com.* (1940) 37 Cal.App.2d 567, 573-574 [99 P.2d 1089].)

The so-called rules simply reflect a continuing attempt to establish a guide applicable to each of the many factual situations which appear in case-by-case decision making. Each case must necessarily turn on its own unique circumstances.

It has long been recognized that certain acts are, under the common standards of humanity, so normal, acceptable, and reasonably to be expected in the course of employment, that they must be impliedly contemplated as permissible acts under the employment contract. In some cases particular customs in the industry, occupation, or place of work extend the list to less than common activities. Without extending this opinion unduly by weighing the various factors considered in each case, we set forth the

following decisions as illustrative of our point. (*State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 925 [64 Cal.Rptr. 323, 434 P.2d 619] [swimming on rest period in nearby canal]; *Elliott* v. *Industrial Acc. Com.* (1942) 21 Cal.2d 281 [131 P.2d 521, 144 A.L.R. 358] [drinking from a bottle erroneously labeled "wine" offered by coemployee to relieve cough]; *F. W. Woolworth Co.* v. *Industrial Acc. Com.* (1941) 17 Cal.2d 634 [111 P.2d 313] [going into hallway for fresh air]; *Leffert* v. *Industrial Acc. Com.* (1934) 219 Cal. 710 [28 P.2d 911] [retrieving overcoat from debris of burned building]; *Western Pac. R.R. Co.* v. *Industrial Acc. Com.* (1924) 193 Cal. 413 [224 P. 754] [going to obtain raincoat]; *Ocean Acc. & Guar. Corp.* v. *Industrial Acc Com.*, 180 Cal. 389 [182 P. 35] [recoving child from path of automobile on premises]; *Whiting-Mead Coml. Co.* v. *Industrial Acc. Com.* (1918) 178 Cal. 505 [173 P. 1105, 5 A.L.R. 1518] [smoking]; *Nichols* v. *Workmen's Comp. App. Bd.*, 269 Cal.App.2d 598 [75 Cal.Rptr. 226] [playing catch during break]; *Employers' etc. Corp.* v. *Industrial Acc. Com.*, 37 Cal.App.2d 567 [99 P.2d 1089] [domestic servant fixing hem of dress falling from a stool while checking in mirror]; *County of Los Angeles* v. *Industrial Acc. Com.*, 89 Cal.App. 736 [265 P. 362] [obtaining water for fellow employee who had fainted].)

Whether a particular activity be classified by the term's response to an emergency, rescue, personal comfort or convenience, recreation, exercise, courtesy, or common decency, the point is that the activity was reasonably to be contemplated because of its general nature as a normal human response in a particular situation or in some cases because of its being recognized as an acceptable practice in the particular place by custom. Human services cannot be employed without taking the whole package. In our view a contract which contemplates the use of a parking area on the premises where employees and automobiles gather must necessarily envision that on occasion an automobile will not function and that employees in the vicinity will go to the aid of the one who has trouble.

The liability of an employer for injuries sustained by his employees on the employment premises is exceedingly broad. Extending his liability to the total premises is somewhat arbitrary but as a practical measure is well established. To some extent it follows from the theory that injuries to employees to which the hazards of the employment environment contribute should be charged to industry as a production cost and passed on to the consumers of the products as an inherent cost of the products. The work day of an employee embraces several intervals when he is not actually performing his assigned duties. These include reasonable periods for rest, lunch, arrival, and departure from the premises. The parking lot cases

hold that an employee who has the use of the premises for parking must necessarily have a reasonable margin of time and space in going and coming between his work and his automobile. They do not state what he may do in this time and space. We think that he may do those normal things that men do during any other work-free period, and unless his action is so wholly unreasonable as to support an inference that he abandoned the employment, he remains within the course of employment.

■ The arising-out-of employment test is met if the course of employment extends to the position of danger at the time and place of injury. (*Madin* v. *Industrial Acc. Com.,* 46 Cal.2d 90, 92 [292 P.2d 892].)

■ In respect to petitioner's contention that the activity of the injured employee was without benefit to it, we are aware that the principle upon which the personal comfort doctrine and the related recreation cases were explained initially was that of mutual benefit. For example, smoking in 1918 was recognized as a "comfort" to the employee which would increase his efficiency, thereby benefiting the employer. While this rationale is still reflected in the decisions, it is apparent from an examination of the cases we have previously cited that benefit to the employer was presumed and in some cases little more than fiction. We see no purpose in adding to this opinion our speculations as to the benefit which might accrue to petitioner by the activity undertaken by the employee in this case but if the element of "benefit" retains any validity today, the clearing of employer's parking lot so as to preclude the necessity of its surveillance of left over cars and the probability of increased goodwill among the several employees would be sufficient under case standards.

The cases cited by petitioner are not in point and are sufficiently answered in the answer to the petition filed by the claimant. The clear distinction between the present case and the case of *State Dept. of Institutions* v. *Industrial Acc. Com.,* 46 Cal.App.2d 439 [116 P.2d 79], on which petitioner particularly relies, is that in that case the employee finished her work and left the premises after which she returned for purely personal reasons. The petition (p. 11) misstates the facts of that case.

The award is affirmed.

Stephens, Acting P. J., and Reppy, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied August 19, 1970.