**COMMERCIAL STANDARD FIRE AND MARINE INSURANCE COMPANY, Appellant,**

v.

**Lewis HOOD et al., Appellees.**

**No. 603.**

Court of Civil Appeals of Texas, Tyler.

Dec. 9, 1971.

Rehearing Denied Dec. 30, 1971.

Ramey, Brelsford, Flock, Devereux & Hutchins, Tracy Crawford, Mike Hatchell, Tyler, for appellant.

Clapp & Beall, Harold B. Clapp, Tyler, for appellees.

DUNAGAN, Chief Justice.

This suit was brought by Lewis Hood and his wife, Patricia Hood, to recover workmen's compensation benefits as provided by Article 8306, sec. 8, Vernon's Ann.Tex.Civ. St., for the death of their son, Van Allen Hood, who was alleged to have been killed

during the course and scope of his employment for the insured, Chamness T. V. and Appliance Center.

The case was tried to a jury which returned a verdict generally favorable to the appellees. Simultaneous with overruling appellant's motion for judgment non obstante veredicto filed after verdict, the trial court entered judgment thereon against appellant in the sum of $4,054.19 plus interest and costs.

Amended motions for a new trial filed by both parties were subsequently overruled, but appellant only has perfected an appeal from the judgment.

Appellant by its first two points of error contends that the trial court erred in overruling its motion for instructed verdict and motion for judgment non obstante veredicto because the evidence established as a matter of law that Van Allen Hood was employed by the insured in a dual capacity and was killed while he was employed in a capacity as, and performing the duties of, a farm laborer, which occupation is not covered by the Texas Compensation Act by virtue of Article 8306, sec. 2, V.T. C.S.[1]

Van Allen Hood entered the employment of Chamness T. V. and Appliance Center, a corporation, the insured herein, on August 3, 1968. He worked part-time for Chamness T. V. which engaged in the general sale of household appliances until his accidental death on April 7, 1969.

Hood's duties at the store were varied; however, his primary duty was to unpack and uncrate appliances, deliver them to customers, straighten up the store, change the displays and carry away trade-ins to the warehouse and to haul off trash, as Chamness T. V. was out of range of the normal city trash pickup. During the week Hood worked after school for approximately two hours. His hours on Saturday were from 1:30 p. m. until 5:30 p. m.

Quintan Chamness, at the time the owner of 70% of the insured's corporate stock, owned (in his own name) a farm outside the city of Tyler. The farm was used by Chamness T. V. as a place to dump excess heavy trash from the corporation and to store or dispose of appliances taken by the corporation in trade. Accordingly, at various times Quintan Chamness would direct the store's part-time employees to haul the trash to his farm or to transport the trade-in appliances thereto, the useable ones being stored in the barn and the unrepairable ones being dumped in a gulley behind the barn.

Sometime prior to the Easter school holidays in 1969, Quintan Chamness decided to clear and prepare a portion of the land at his personal farm in order to plant a stand of Coastal Bermuda grass. He made inquiry as to whether his part-time employees would like to do the work for him. He called Van Allen Hood and Steve Calhoun, another part-time employee, into his office and offered them the job. The fol-

---

1. "The provisions of this law shall not apply to actions to recover damages for personal injuries nor for death resulting from personal injuries sustained by domestic servants, farm laborers, ranch laborers, nor to employees of any firm, person or corporation having in his or their employ less than three (3) employees nor to the employees of any person, firm or corporation operating any steam, electric, street, or interurban railway as a common carrier. Any employer of three (3) or more employees at the time of becoming a subscriber shall remain a sub-scriber subject to all the rights, liabilities, duties and exemptions of such, notwithstanding after having become a subscriber the number of employees may at times be less than three (3). In determining the number of persons employed, under this Section, by any firm, person or corporation, persons employed both within and without the State of Texas shall be counted regardless of whether the firm, person or corporation is resident within or without the State of Texas. Acts 1917, p. 269; Acts 1921, p. 221; Acts 1963, 58th Leg., 503, ch. 188, § 1."

lowing testimony from Steve Calhoun gives the particulars of that conversation:

"Q. Now, Van,[2] prior to the Easter holidays, did Mr. Chamness approach you and Van and *ask* you about working at the farm?

"A. Yes.

"Q. Will you describe that? When it happened, how it happened, and under what circumstances it happened. As best you recall?

"A. Well, I can't remember what day it was on, but it was prior to the Easter holidays. And we were in the office of Mr. Chamness, and he *asked* Van and I if we wanted to do any farm work, *and we accepted*." (Emphasis supplied).

Subsequent to Hood and Calhoun's acceptance of the work at the farm and prior to April 7th, the day of the fatal accident, and the Easter holidays, Quintan Chamness had a conversation with appellee, Patricia Hood, Van Allen's mother, during which they discussed what Hood and Calhoun would be doing at the farm as opposed to the work they had been doing at the store. This is the only conversation Chamness had with Mrs. Hood concerning Van Allen's work at the farm insofar as the record shows.

Hood and Calhoun were driven straight to the farm Monday morning from their homes by Patricia Hood, and they did not report to the store. On Monday, the boys proceeded to work as they had been instructed either on that or on a previous day by Quintan Chamness. Their work at the farm on all occasions included cleaning up persimmon sprouts, cutting small trees, shrubs, and sassafras sprouts, hauling and stacking limbs, and generally clearing the land for planting. At the time of the fatal accident Hood and Calhoun were using a tractor to remove limbs. While Hood and

Calhoun worked only during the late afternoon during the week and one-half day on Saturday for Chamness T. V., they apparently worked an entire day at the farm. Payment for the work at the farm was made from the funds of the corporation.

There were four special issues submitted to the jury and in response thereto they made the following findings to said issues:

Special Issue No. 1 "that VAN ALLEN HOOD received his injuries in the course of his employment by Chamness T. V. and Appliance Center,"

Special Issue No. 2 that Van Allen Hood was not employed by Quintan Chamness in two capacities, that is, at a part-time employee of Chamness T. V. and Appliance Center and as a part-time farm or ranch laborer on Quintan Chamness's farm,

Special Issue No. 3 "that at the time of this accident VAN ALLEN HOOD was performing services as a farm or ranch laborer," and

Special Issue No. 4 that the amount of Van Allen Hood's average weekly wage as of the date of the fatal accident in question, which would be just and fair to all parties was $20.00.

■ The jury's finding "that at the time of this accident VAN ALLEN HOOD was performing services as a farm or ranch laborer" is before this court unchallenged. However, the record reflects that there is ample evidence to support such finding. Beyond question, cutting trees and shrubs, hauling limbs, clearing persimmon sprouts, small trees, sassafras sprouts and that sort of thing and clearing the land in preparation of putting out Coastal Bermuda grass is farm or ranch work. Guerrero v. United States Fidelity & Guaranty Company, 128 Tex. 407, 98 S.W.2d 796 (1936); Ellis v. Continental Casualty Company, 115 F.2d 1006 (5th Cir., 1940).

---

2. Obviously, this question was directed to the witness, Steve Calhoun, rather than to Van Allen Hood, the deceased, and was apparently a mistake on the part of appellant's counsel.

Since there is no question, therefore, that the deceased, Van Allen Hood, was killed while performing the duties of a farm or ranch laborer, the remaining question is whether he was "employed" by the insured in that exempted capacity, as appellant contends he was, or whether, as appellees contend, he was only "temporarily directed" into that work within the meaning of the proviso to the definition of the term "employee" as found in Article 8309, sec. 1, V.T.C.S.[3]

■ Unlike the factual situation presented in Texas Employers Insurance Association v. Weber, 386 S.W.2d 835 (Tex.Civ. App., Austin, 1965, writ ref., n. r. e.), in this case Hood and Calhoun were offered new employment, which they accepted, entirely unrelated to the work they were doing in the usual course and scope of their employment with Chamness T. V. In such new employment as a farm laborer, the nature and the hours of the work performed by Hood were different than the duties customary to his work for Chamness T. V. and Appliance Center in the store. They were not ordered, directed or instructed to go out on Quintan Chamness's farm and perform the services of farm laborers. It was of their own choice. We think the evidence establishes conclusively that Hood and Calhoun were not working at the farm under the "temporary direction" of their regular employer, Chamness T. V. and Appliance Center, the insured.

■ It is the established law in this state that a person may be employed under a contract that provides for services in two capacities or enterprises, in one of which he is covered by the workmen's compensation act and in the other of which he is not covered. While performing work or services in the capacity or an enterprise covered by the act, if injured, he may recover

benefits; however, if injured while performing work or services in a capacity or enterprise excluded from coverage, he may not recover. Hardware Dealers' Mutual Fire Insurance Company v. King. 426 S.W. 2d 215 (Tex.Sup., 1968).

We hold that the evidence establishes conclusively that Van Allen Hood was employed by the insured in a dual capacity.

■ Having determined as a matter of law that there was dual employment, the only question left for determination is in what capacity was the appellee working when he suffered his fatal injury. As stated above, the jury found that at the time of the fatal accident Hood was engaged as a farm laborer. This finding of the jury is unchallenged. This court is bound by this finding. It was established conclusively by the evidence, and the jury so found, that at the time of Hood's death he was engaged in that capacity (farm laborer) not covered by Article 8306, V.T.C.S. Therefore, appellees are not entitled to recover compensation benefits. Holmes v. Travelers Ins. Co., 148 S.W.2d 270 (Tex. Civ.App., Galveston, 1941, writ ref.).

We have not discussed appellant's points relating to the insufficiency of the evidence to support the jury's findings and answers to Special Issues Numbers 1 and 2, but if these points should be reached, we would hold that such findings are not supported by factually sufficient evidence.

For the above stated reasons, the trial court's judgment is reversed and rendered for appellant.

MOORE, Justice (dissenting).

I dissent.

The undisputed facts show that upon the date of his death on April 7, 1969, deceased

3. " * * * provided that an employee who is employed in the usual course of the trade, business, profession or occupation of an employer and who is temporarily directed or instructed by his employer to perform service outside of the usual course of trade, business, profession or occupation of his employer is also an employee while performing such services pursuant to such instructions or directions; * * " (23 V.T.C.S. p. 336)

was an employee of Chamness T. V. and Appliance Center, a corporation. Quintan Chamness, the president of the corporation, testified that prior to April 7th, he instructed Van Allen Hood to report to work at the farm rather than the store. He further testified that Van did not work at the store on that day because he instructed him to go to the farm; that he went to the farm because he told him to. He testified that he instructed deceased as to his duties on the farm and instructed him to use the tractor; that deceased had worked two days on the farm during the prior week before his death; and that deceased was paid $1.50 per hour out of the corporate funds while working on the farm, the same as he was paid while working at the store. There is nothing in Mr. Chamness's testimony showing deceased was employed in a dual capacity. He was employed to work in the store. The testimony of Steve Calhoun merely shows that some time after the original contract of employment, he and the deceased consented to do farm work during the Easter holidays. As I view the record, the evidence shows, without dispute, that the deceased was temporarily directed to do farm work. Under these circumstances, the Workmen's Compensation Act specifically provides that he is deemed to be an employee covered by the Act. Therefore, his beneficiaries are entitled to workmen's compensation benefits. Article 8309, sec. 1, V.A.T.S.; Texas Employers Insurance Association v. Weber, 386 S.W.2d 835 (Tex.Civ.App., Austin, 1965, writ ref., n. r. e.). The jury's negative answer to the issue inquiring as to whether deceased was employed in a dual capacity means that the jury concluded that the insurance company failed to discharge its burden of proof of proving that he was employed in a dual capacity. In my opinion the evidence was at least sufficient to raise a fact issue. Consequently, the jury's finding would be binding on this court. I would affirm the judgment.