The AETNA CASUALTY AND SURETY COMPANY, Appellant,

v.

The ESTATE of Annie Tolbert THOMAS, Appellee.

No. 932.

Court of Civil Appeals of Texas, Tyler.

Feb. 10, 1977.

Rehearing Denied March 17, 1977.

Jeffrey R. Parsons, Fulbright & Jaworski, Houston, for appellant.

G. Robert Friedman, Friedman & Chaffin, Houston, for appellee.

McKAY, Justice.

This is a workmen's compensation case in which the question presented is whether the death of Amos Thomas was within the coverage afforded by the Texas Workmen's Compensation Law. Trial was before a jury, and based on the verdict [1] the trial court rendered judgment for the Estate of Annie Tolbert Thomas, appellee, for $18,-326.16, against The Aetna Casualty & Surety Co., appellant.

Amos Thomas died by drowning in the swimming pool at the private residence of Gordon Van Liew, President of Cal-Tex Citrus Juice, Inc. (Cal-Tex), a subscriber for workmen's compensation insurance and Appellant's insured.

Appellant's points one and two complain that the trial court erred in overruling appellant's motion for instructed verdict and

1. "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that at the time of such drowning, Amos Thomas was an employee of Cal-Tex Citrus, Inc.?

" 'Employee' means a person in the service of another under a contract of hire, express or implied, oral or written, whereby the employer has the right to direct the means or details of the work and not merely the result to be accomplished.

"Answer 'We do' or 'We do not'.

"Answer 'We do.'

"If you have answered Special Issue No. 1 'We do,' and only in that event, then answer:

"SPECIAL ISSUE NO. 2

"Do you find from a preponderance of the evidence that he drowned in the course of his employment by Cal-Tex Citrus Juice, Inc.?

"A drowning is in the course of employment if it is produced or precipitated by an employ-ee's work or the conditions of his employment. Otherwise a drowning is not in the course of employment, even if it occurs on the job.

"Answer 'We do' or 'We do not.'

"Answer 'We do.'

"SPECIAL ISSUE NO. 3

"Do you find from a preponderance of the evidence that at the time of such drowning Amos Thomas was a domestic servant of Mr. and Mrs. Gordon Van Liew?

"Answer 'We do' or 'We do not.'

"Answer: 'We do not.'

"Domestic Servant as used in this charge means a person who primarily is employed in or about the maintenance of a home itself. Such a person is a household servant working in or about the house for the upkeep thereof, and the care, comfort and convenience of the occupants thereof."

motion for judgment non obstante veredicto, and in submitting issue 3 to the jury, because there was no evidence or insufficient evidence to support the jury's answer that Amos Thomas was not a domestic servant.

Cal-Tex was a company engaged in the business of processing, packaging and distributing chilled citrus products, with offices and plant located at 402 Yale Street, Houston. Cal-Tex was a family-type corporation, and Van Liew owned all the shares of stock. Thomas answered an ad Van Liew had run in the newspaper for a live-in gardener or yardman. Thomas was employed by Van Liew to do yard work at Cal-Tex and to do yard work at Van Liew's residence. He was carried on the payroll and paid by Cal-Tex. Thomas mowed the lawns, trimmed hedges and swept the yard at Cal-Tex and kept it clean. He had no duties inside the Cal-Tex buildings and never worked anywhere but on the yard or parking area and was classified as a yard man. According to Van Liew's testimony Thomas usually worked one day and a half to two days at Cal-Tex—usually Wednesdays and Saturdays—and worked the other weekdays at the Van Liew residence. He sometimes worked at the plant on days other than Wednesday or Saturday.

Thomas was not paid any money by Van Liew for his domestic work but he was furnished living quarters above Van Liew's garage, and Van Liew furnished his meals. Thomas cooked his own breakfast but ate other meals in the Van Liew house. His duties at the Van Liew residence were to cut the lawn, trim the hedges, sweep the walks, water the grass and beds, plant beds and clean the swimming pool. He sometimes cleaned the cabanas around the pool or the garage, but he never worked inside the house.

On Saturdays Thomas would go with Van Liew to the Cal-Tex plant to work, and they would usually leave the Van Liew residence between 9:00 and 10:00 a. m., and Thomas would wait for Van Liew near the garage. On a Saturday morning, between 9:00 and 9:30, after looking for Thomas in the yard

and in his living quarters, Van Liew discovered Thomas face down in the water in the deep end of the swimming pool. Van Liew testified Thomas was apparently in the process of cooking his breakfast since he discovered bacon laid out and eggs burned up in the skillet on an electric grill Thomas used. The police were called and an autopsy was performed with a finding that Thomas died from drowning.

The Van Liew maid testified Thomas routinely was cooking or eating his breakfast at the cabana area or cleaning the swimming pool when she arrived at work at approximately 8:00 a. m. each morning, but she was late to work on the morning of his death. A brother of Thomas, Adam Thomas, testified that he went to the Van Liew residence on the morning of Thomas' death and the swimming pool was clean.

The provisions of the Workmen's Compensation Law, Art. 8306, Sec. 2, in part read as follows:

> "The provisions of this law shall not apply to actions to recover damages for personal injuries nor for death resulting from personal injuries sustained by domestic servants . . . ."

We believe, and the record conclusively reveals, that Thomas was employed by Van Liew in two capacities—as a domestic servant at the Van Liew residence and as a yardman at Cal-Tex. It appears the case of *Hardware Dealers' Mutual Fire Ins. Co. v. King*, 426 S.W.2d 215, 217–218 (Tex.Sup. 1968), presents the same fact situation as here present, and is controlling on the legal point under consideration. Judge Calvert's opinion at pp. 217–218, states:

> "A person's contract of employment may provide for services in two capacities or enterprises, in one of which he is covered by the Compensation Act and in the other of which he is not covered. *Tex. Emp. Ins. Ass'n. v. Derrick*, 207 S.W.2d 199 (Tex.Civ.App.1947, writ ref'd n. r. e.). If injured while performing work or services in a capacity or an enterprise covered by the Act, he may recover benefits; but if injured while performing work or services in a capacity or an enterprise exclud-

ed from coverage, he may not recover. *Denny v. Dept. of Labor & Industries, etc.,* 172 Wash. 631, 21 P.2d 275, at 278 (1933); *Maeda v. Dept. of Labor & Industries,* 192 Wash. 87, 72 P.2d 1034, at 1035 (1937). See also 172 A.L.R. 382."

On the day of his death Thomas did not go to the Cal-Tex plant and, therefore, did not report for work or perform any work for Cal-Tex. The evidence establishes that just prior to his death Thomas was apparently either preparing his breakfast or cleaning the swimming pool.

We agree that the definition given by the trial court in connection with issue 3 was a correct one, 13 Words and Phrases 419, 420; 27B C.J.S. Domestic pp. 979, 980. We believe that the record conclusively shows that Thomas, at the time of his death, was engaged in one of two activities: he was acting as a domestic servant, or he was attending to purely personal matters. In view of our disposition of this appeal, we believe the answer of the jury to issue 3 was not controlling.

By point three appellant says that there was no evidence that Thomas drowned in the course of his employment, and point four says there was insufficient evidence to sustain the finding of the jury in issue 2 that Thomas drowned in the course of his employment with Cal-Tex. By point five appellant says there was no evidence that Thomas at the time of his death was acting as an employee of Cal-Tex within the meaning of the term "employee" as defined by Art. 8309, Sec. 1, V.A.C.S.; point six says there was insufficient evidence to support the jury's answer to issue 1 that Thomas was acting as an employee of Cal-Tex at the time of his death.

Art. 8309, Sec. 1, V.A.C.S., provides in part:

" 'Employee' shall mean every person in the service of another under any contract of hire . . . except one whose employment is not in the usual course of the trade, business, profession or occupation of his employer . . . ."

Issue 1 asked the jury whether Thomas was an employee of Cal-Tex, and the answer was that he was an employee. It was undisputed that Thomas was under a contract of hire with Cal-Tex, but whether he was an employee entitled to Workmen's Compensation at the time of his death would depend upon whether he was engaged in some activity in the usual course of the business of Cal-Tex. The record does not reveal that Thomas was performing any duty, doing any work or furthering the business of Cal-Tex at the time he died.

This court in *Commercial Standard Fire and Marine Ins. Co. v. Hood,* 474 S.W.2d 522, 525 (Tex.Civ.App.1971, writ ref'd n. r. e.), said:

"Having determined as a matter of law that there was dual employment, the only question left for determination is in what capacity was the appellee working when he suffered his fatal injury. As stated above, the jury found that at the time of the fatal accident Hood was engaged as a farm laborer. This finding of the jury is unchallenged. This court is bound by this finding. It was established conclusively by the evidence, and the jury so found, that at the time of Hood's death he was engaged in that capacity (farm laborer) not covered by Article 8306, V.T.C.S. Therefore, appellees are not entitled to recover compensation benefits."

If it could be said in the instant case that Thomas was working as an employee at the time of his death the nature of his work was that of a domestic servant which was not covered by Art. 8306.

The case of *Torres v. Industrial Commission,* 10 Ariz.App. 210, 457 P.2d 750, 752 (1969), had almost an identical fact situation as in the instant case. Miss Torres was a resident in the home of Mr. and Mrs. Singer in Phoenix; she had certain assigned household duties, and she was expected to be at the home five and one-half days each week. The Singers had a swimming pool at their residence, and had a rule that no one swam alone in the pool. Miss Torres could not swim. The Singers owned a business called the Murray Auto Radio Center. Miss Torres also worked at the Center doing

basically janitorial work, but she had some clerical duties. She worked at the Center one or two days a week and sometimes three days and she was paid for these days. She was not paid for her domestic work, but was furnished her room and board as compensation. While the Singer family was away from home her body was discovered in the swimming pool. The court held that there was a dual relationship and that,

"If she was a domestic servant, she was not covered by the workmen's compensation insurance. If she was not a domestic, then she was not 'employed' in relation to her status at the Singer home and would not have met her death in the course and scope of her employment. We have no difficulty in recognizing a dual status situation wherein the relationship between a person who performs acts for the benefit of another may at times be an industrially insured employee and may at times be a person who comes within the exclusion of A.R.S. § 23–902, subsec. A or occupies a status of not being an employee."

 We hold there is no evidence to support the jury's finding in issue 2 that Thomas was in the course of his employment with Cal-Tex at the time of his death. We do not reach appellant's point four on the insufficiency of the evidence to support the jury's answer to issue 2, but had we reached it, we would hold the evidence to be insufficient.

In our view of the record it is conclusive that Thomas at the time of his death was not an employee of Cal-Tex within the meaning of Art. 8309, Sec. 1, V.A.C.S. He was employed by Cal-Tex to work on a regular basis, but on the occasion of his death he was not "in the usual course of the . . . business . . . of his employer."

Appellant's point three is sustained. We do not reach points four, five and six.

Appellee presents a cross-point that the trial court committed error in excluding certain testimony of Adam Thomas, brother of deceased. In the excluded testimony Adam Thomas testified that he visited his brother at the Cal-Tex plant, that the deceased was there sometimes on Mondays and Fridays, and that "Amos was on straight time. He worked all kind of hours there—he didn't have no certain hours to work." In our view there was no error, but if there was error in excluding this evidence, it was harmless. Rule 434, T.R.C.P.

The judgment of the trial court is reversed, and judgment is here rendered that appellee take nothing.