[Civ. No. 49816. Second Dist., Div. Five. Apr. 21, 1977.]

FREMONT INDEMNITY COMPANY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
MADELEINE MAKAEFF et al., Respondents.

## COUNSEL

Ray C. Bennett and Bennett & Fields for Petitioner.

George McDonald, Peter F. Wisner, Frank H. Batlin and Thomas J. McBirnie for Respondents.

## OPINION

**KAUS, P. J.—** The single issue is whether decedent's fatal injury arose out of and occurred in the course of his employment. The compensation judge found that it did and awarded death benefits to his wife and child. The board adopted the judge's opinion and decision. We granted the insurer's petition for writ of review, and, after consideration have concluded that the board's decision is supported by substantial evidence (Lab. Code, § 5952), particularly when under the statutory mandate of liberal construction. (Lab. Code, § 3202.)

### FACTS

Decedent John Makaeff was plant manager of a computer components company. His immediate superior was Pravin Patel, the company vice-president. David Johnston is the president of the corporation.

Makaeff was on a salary. If he was ill or took time off for personal affairs, his salary would not be reduced. His hours were from 8 a.m. to 5 p.m. but sometimes he came in earlier and left later. Corporation employees generally took coffee breaks and other breaks, which John-

ston, the corporation president, considered helpful to the employees' efficiency.

Johnston owned a Tri-Sport, which is a three-wheeled sports vehicle. He had been having trouble with the spark plugs. He suggested that Makaeff take the Tri-Sport to the desert. He told him, however, that he would first have the spark plugs fixed. Makaeff declined, saying that such vehicles were "deadly weapons."

At the time Kinney Kuzmin, Makaeff's nephew, was on a visit from Canada. Makaeff had had the nephew at the plant, doing "things together." He wanted to get the nephew "involved" and suggested that Kinney do the repairing, since he had had experience with snowmobiles which had similar motors. Johnston and Makaeff agreed that Kinney should work on the Tri-Sport the following day. This conversation took place in Makaeff's office in the company of Pravin Patel, the vice-president of the corporation. Asked whether he anticipated that the Tri-Sport would be test driven or run after the repair job, Johnston replied: "I contemplated it at least being run."

Patel was the only witness who testified to the events of the next day when the accident happened. He had noticed Kinney working on the Tri-Sport and riding it on a grassy area near but not on company property. Then he saw Makaeff coming out of the front door of the plant and heading for the lot where the vehicle was being tested. The Tri-Sport stopped, the nephew got out, Makaeff got on and drove it away. The vehicle crashed into a fence. Makaeff later died from the injuries.

Patel did not try to stop Makaeff from driving the vehicle. He said that just a few seconds elapsed from the time the vehicle came to a halt while the nephew was driving it and the time that Makaeff entered it. However, Makaeff drove around the grassy knoll a few times slowly before driving to another area. Patel was Makaeff's immediate supervisor, but Makaeff was the plant manager and Patel did not instruct him on day to day operations.

## Discussion

Our approach to this case has paralleled that of the experienced compensation judge who, throughout the hearing, was extremely skeptical whether Makaeff's death arose out of and in the course of his employment. (Lab. Code, § 3600.) Nevertheless, after extensive briefing,

he did so find. We, too, doubted compensability when we granted the writ of review. On consideration, however, we find that the award must be affirmed. In this connection we note that our task is considerably easier than that of the compensation judge and the board: theirs was the duty to draw inferences from the rather ambiguous and somewhat fragmentary evidence. We merely have to say whether those inferences were reasonable.

Putting together the raw evidence and reasonable inferences in favor of the award, this is the picture that emerges: Johnston—the boss —owned a Tri-Sport which needed fixing. Information to that effect was conveyed to Makaeff concurrently with a suggestion that he himself take the vehicle to the desert and ride it. The motivation for this suggestion is obscure; minimally, however, it establishes Makaeff's authority to ride the vehicle. Makaeff then successfully volunteered the services of his nephew whom he wanted to get "involved." It is not unreasonable to infer that Johnston would not have permitted the nephew to work on his vehicle were it not for an unarticulated assumption that Makaeff would supervise the nephew's work in the same fashion in which he supervised all work at the plant.

We now examine reasonable inferences concerning Makaeff's motive in riding a vehicle which he had described as a "deadly weapon" only the day before. One obvious inference is, of course, that he felt obliged to test the result of the work Kinney had done for Johnston. Another is that in spite of—or perhaps even because of—the dangerous nature of the vehicle, he rode it for relaxation during an authorized work break. Possibly each motive played a part in his decision to ride the Tri-Sport.

Basing their contentions on this analysis, respondents argue that Makaeff was killed while on a "special errand" or "special mission" for his employer's president, Johnston, or that his death was compensable under the "personal comfort" doctrine.

■ With respect to the "special errand" theory, the first problem is semantic. Most narrowly, that doctrine is merely an exception to the "going and coming" rule (e.g., *Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 866-869 [101 Cal.Rptr. 105, 495 P.2d 433].) Reference to the doctrine appears, however, to have become a shorthand way of saying that an off-the-premises injury is nevertheless compensable because of some connection, often quite tenuous, with the work the injured employee was hired to do.

The Board's brief recognizes that the chief difficulty here is that the Tri-Sport was Johnston's personal property, not in any way devoted to the employer's business. It therefore refers us to a line of out-of-state cases, discussed in 1 Larson, Workmen's Compensation Law (1972) section 27.40, holding—with few exceptions described by the author as "plainly wrong" (p. 5-265)—that injuries incurred in carrying out an order which benefits the employer privately are, nevertheless, compensable.[1] The rationale for the rule is, of course, that the employee who is ordered or requested to perform such a task, should not have to choose between losing compensation or being fired.[2]

We have no doubt that California law would not force such a Hobson's choice on an employee. The real question is whether the rule fits the facts. There is certainly no evidence that Makaeff was ordered or even requested to undertake the repair job or to have it done by his nephew. The only evidence is that he volunteered Kinney's services when Johnston said that he was going to have the job done at a service station. Nevertheless, once Johnston had accepted the offer, it is reasonable to infer that Makaeff felt himself under an obligation to check that the job was being done right.

Even so, we are still faced with the fact that Johnston neither ordered nor requested supervision by Makaeff. Any sense of duty to check on Kinney's work had to arise from a reasonable apprehension on Makaeff's part that such supervision was expected of him either as plant manager, as Kinney's "sponsor," or both.

Is such an implied-in-fact obligation to aid in the performance of a task which benefits the employer privately enough? Larson categorically says that it is. "[The] employer's 'order' need not take the form of an outright command, if in the circumstances the employer's 'suggestion,' *or even the employee's impression of what is expected of him* in serving the

---

[1]No useful purpose would be served by citing the many authorities already cited in Larson. The situations in which the conditions of compensation were found cover the spectrum from the glazier who is injured corraling the boss' colt (*Pridgen* v. *Industrial Commission* (1950) 70 Ariz. 149 [217 P.2d 592]), to the restaurant cook who was installing a lock on the employer's farm. (*Moody* v. *Baxley* (1946) 158 Fla. 357 [28 So.2d 325].)

[2]The only California authority we have found on the point is a throwaway line in *Western Indem. Co.* v. *Indus. Acc. Com.* (1919) 43 Cal.App. 487, 489 [185 P. 306]. There, while holding that the insurance carrier did not cover the accident in question because of the provisions of the policy, the court said "[t]hat the employer ... would be liable, there would seem to be no question: ...." The employee in question had performed a "purely gratuitous" service to his employer in chauffeuring a former employee from her new job to her sickbed.

interests of his employer or superior, are in fact sufficient to motivate his undertaking the service in question." (1 Larson, *supra*, § 27.40, pp. 5-267—5-268. Italics added.) Unfortunately, the only authority cited by Larson for the italicized part of the rule—the only one which fits our facts—is not too impressive. The case is *Lowicki* v. *National Sugar Refining Co.* (1952) 281 App.Div. 113 [118 N.Y.S.2d 86]. There the decedent was killed after volunteering aid in helping the company truck driver tow the foreman's stalled car out of garage. Such aid was no part of his duties and no one had requested him to furnish it. While an award was affirmed, the court never did verbalize its rationale as interpreted by Larson.

Under the facts of this case we need not decide whether California would follow Larson's lead. If Makaeff did not ride the Tri-Sport because he felt under an obligation to do so, the only reasonable alternative is that he did it to relax, to take his mind off his work, during an authorized work break.

■ Under the "personal comfort" doctrine "the course of employment is not considered broken by certain acts relating to the personal comfort of the employee, as such acts are helpful to the employer in that they aid in efficient performance by the employee." (*State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd. (Cardoza)* (1967) 67 Cal.2d 925, 928 [64 Cal.Rptr. 323, 434 P.2d 619].) In *Cardoza* the employee had gone swimming on a hot day in a nearby canal owned by another company. The employee's foreman had told him that if he did go swimming on company time not to let anyone see him doing it. The court concluded that the evidence supported the inference that some swimming on company time would be tolerated and that on a day of extreme heat the cooling effect of the swim during a permitted work break would improve efficiency of the employees.

As the court stated in *North American Rockwell Corp.* v. *Workmen's Comp. App. Bd.* (1970) 9 Cal.App.3d 154 [87 Cal.Rptr. 774]—in which an employee was injured assisting another employee to start his car—"[w]hether a particular activity be classified by the term's response to an emergency, rescue, personal comfort or convenience, recreation, exercise, courtesy, or common decency, the point is that the activity was reasonably to be contemplated because of its general nature as a normal human response in a particular situation or in some cases because of its being recognized as an acceptable practice in the particular place by

custom. Human services cannot be employed without taking the whole package." (9 Cal.App.3d at p. 159.)

 The principle of *North American Rockwell* that compensability is not to be determined by deciding whether the activity fits neatly into a previously recognized pigeonhole is particularly applicable here, where, as noted, the deceased's motivation in riding the Tri-Sport must be left to inference. Certainly it was a "human response" to the situation—whether that response was triggered by a desire to please the company president, by a desire to relax, or a little bit of both. ██ The rule that "all reasonable doubts as to whether the injury arose out of employment are to be resolved in favor of the employee" (*Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451]), compels affirmance of the award.

The insurer relies on *Fireman's Fund Etc. Co.* v. *Ind. Acc. Com. (Elliott)* (1952) 39 Cal.2d 529 [247 P.2d 707], and on *Liberty Mut. Ins. Co.* v. *Ind. Acc. Com. (Dahler)* (1952) 39 Cal.2d 512 [247 P.2d 697], but neither case applies. *Dahler* was distinguished in *Cardoza* on grounds that the employee was injured while engaged in an independent personal recreational activity on his own free time. (67 Cal.2d at p. 927.) Here, even more clearly than in *Cardoza*, decedent was injured on company time during an impliedly authorized break. Similarly inapposite is *Elliott* in which the employee was injured taking a walk after completing her work for the day. (39 Cal.2d at pp. 530-531.)

The award is affirmed.

Hastings, J., concurred.

STEPHENS, J.—I concur in the result and in that portion of the opinion dealing with "special errand" and "special mission." There being no California case authored by higher authority, I conclude that the reasoning of Larson as set forth in the principal opinion is correct and should be established law in this state.

Petitioner's application for a hearing by the Supreme Court was denied June 30, 1977. Clark, J., was of the opinion that the application should be granted.